Memorandum. Order unanimously modified by declaring that the interest of the assignee for the benefit of creditors be superior to and have priority over the interests of the Small Business Administration and the Long Island Trust Company and, as so modified, affirmed, without costs.
It is the opinion of this court that the test used to determine whether a debtor has a "place of business” in more than one county of this State so as to enable a secured creditor to properly file a financing statement and perfect a security interest under section 9-401 (subd [1], par [c]) of the Uniform Commercial Code is the "notoriety” test (P.S. Prods. Corp. v Equilease Corp., 435 F2d 781; Matter of Mimshell Fabrics, 491 F2d 21; Matter of McQuaide, 5 UCC Rep Serv 802; White and Summers, Handbook of the Law under the Uniform Commercial Code, § 23-14, p 827). The mere fact that only a "couple” of the assignor’s customers knew of the New York residence of the assignor’s president as opposed to all the other facts indicating a place of business in Farmingdale, N. Y., establishes that the assignor maintained only one place of business and therefore the Small Business Administration (S.B.A) had to file with the Department of State and with the office of the filing officer of the County of Suffolk. Having failed to do so, S.B.A.’s security interest was never properly perfected.
*987 At this point, the "junior” creditor, Long Island Trust Company (L.I.T.) contends that it succeeded to the status of the superior creditor since it perfected its security interest prior to the assignment for the benefit of creditors. Both the assignee and the S.B.A. contend that the incomplete filing is still effective, "with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement” (Uniform Commercial Code, § 9-401, subd [2]). L.I.T. contends that not only did it have no knowledge of the contents of such statement, but it did not even know that such a statement existed.
It is the opinion of this court that even though "knowledge of the contents of such financing statement” means actual knowledge (Uniform Commercial Code, § 1-201, subd [25]) and that mere knowledge of the existence of a security agreement will not be sufficient (White and Summers, supra, § 23-15, pp 829-833), we are persuaded that the rationale of Matter of Davidoff (351 F Supp 440) is applicable herein. The code does not require that the junior creditor see the statement filed or even know of the filing. What is required is that the junior creditor know the contents of the financing statement. In the case at bar, the financing statement filed by S.B.A.’s assignor included the name of the debtor and creditor, the date of the filing and the type of the property encumbered. At the time Enark’s president came to L.I.T. for the loan, L.I.T.’s officer, Mr. Lambui, was aware that out of a net worth of $160,000, all of it, except for about $13,000 was pledged, knew that the pledge was for two prior bank loans and that the pledge covered Enark’s equipment. We, therefore, conclude that L.I.T. had actual knowledge of the contents of the improperly filed financing statement.
The result of this determination vaults the assignee for the benefit of creditors into the position of having the first priority (Matter of Bibinger, 12 AD2d 237). In view of the priority of the assignee for the benefit of creditors, the validity and scope of the after-acquired property clauses contained in the security agreements are no longer relevant.
Concur: Glickman, P. J., Pittoni and Gagliardi, JJ.