In re Robert E. JOHNSON, Debtor.

Robert E. JOHNSON, Plaintiff,

v.

FIRST NATIONAL BANK OF JOLIET, First National Bank & Trust Company of Rochelle, Farmers and Traders State Bank, H. Jacob and Freda Naegle, J.I. Case Credit Corporation, Walker-Schork International, Inc., and International Harvester Credit Corporation, Defendants.

Bankruptcy Nos. 82 B 5837, 82 A 1956.

United States Bankruptcy Court, N.D. Illinois, E.D.

March 15, 1983.

thus recoverable under the strong arm power of Section 544 of the Bankruptcy Code and the section 547 preference provision. Furthermore, debtor alleged that the First National Bank of Joliet had a valid and perfected security interest in and to the items in question and seeks the permission of the court to turn over the proceeds or property to said bank. Defendants Case and Walker-Schork filed a joint response to debtor's motion and a cross-motion for summary judgment alleging that their security interests in the property in question are valid under Ill.Rev. Statutes Chapter 26, Section 9–401(2) and that such interests are superior and prior to those of the Joliet Bank.

The court being fully advised in the premises and having carefully considered the pleadings and memoranda filed by the parties, does hereby deny debtor's motions for summary judgment and grants defendants Case and Walker-Schork's motion for summary judgment.

Joseph G. Gavin, Jenner & Block, Chicago, Ill., for debtor.

Burns & Carlson, DeKalb, Ill., for Walker-Schork.

Zenoff, Westler & Zenoff, Chicago, Ill., for J.I. Case Credit Corporation.

Fearer & Nye, Rochelle, Ill., for 1st Natl. Bank of Rochelle.

George Mahoney, A. Michael Wojtak, Herschbach, Tracy, Johnson, Bertani & Wilson, Joliet, Ill., for 1st Natl. of Joliet.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

The plaintiff-debtor, Robert E. Johnson, filed a complaint against various defendants under sections 547 and 544 of the Bankruptcy Code. Subsequent to filing said complaint, debtor filed his motions for Summary Judgment against two of the defendants, Walker-Schork International, Inc. and J.I. Case Credit Corporation (Defendants), alleging that said defendant's security interests were improperly perfected and

## FINDINGS OF FACT

The debtor, Robert E. Johnson, is a farmer who has resided and farmed in DeKalb County, Illinois for approximately 60 years. In the course of his business, debtor purchased certain farm machinery and signed certain security agreements thereon. Additionally, debtor for many years obtained financing to operate his farm business from the First National Bank of Joliet and said bank obtained certain notes to secure those loans. In November of 1977 debtor entered into a transaction whereby he purchased three pieces of International Harvester equipment to be used in his farm business. Pursuant to this transaction, debtor signed a retail installment contract and security agreement which is presently held by Walker-Schork International, Inc. Said installment contract lists debtor's residence as city of Lee, County of DeKalb, Illinois. However, the "Times Sales Application" for purchase of said equipment filled out by a Walker-Schork employee and signed by debtor also in November of 1977 indicates debtor's address as City of Lee, County of

Lee, Illinois. Walker-Schork filed financing statements covering the Harvester equipment with the Lee Co., Illinois, Recorder of Deeds on November 21, 1977 and again on December 3, 1979.

On or about July 15, 1980 debtor entered into a similar transaction for the purchase of a J.I. Case tractor. An application for credit was filled out by a Case Credit employee and signed by debtor which stated debtor's residence to be City of Lee, County of Lee, Illinois. The following day debtor signed a combination retail installment contract and security agreement evidencing the purchase of the Case tractor which again was filled out to reflect debtor's residence as Lee County. On July 28, 1980 a financing statement to reflect the above transaction was filed with the Lee County Recorder of Deeds.

For a number of years prior to debtor's filing of his Chapter 11 petition, he had been borrowing money to finance his farming operations from the First National Bank of Joliet. On February 14, 1980 pursuant to an $80,000 loan agreement, Joliet Bank obtained the signature of the debtor on a note and security agreement which reflected as security "full line of farm equipment and hereafter acquired equipment kept on the Naegle farm located in Willow Creek Township, Lee County and also on the Truman Johnson farm located in Shabbona Township, DeKalb County, Illinois." A financing statement reflecting same was filed with the DeKalb County recorder of deeds on March 1, 1980 and subsequent thereto a number of similar financing statements were filed in DeKalb County.

At the time of filing the financing statement above, the Joliet Bank knew debtor owed money to Walker-Schork for the Harvester equipment and subsequently learned of the July, 1980 Case tractor purchase. Joliet Bank did not, however, actually check the records of the Lee County Recorder of Deeds and find the financing statements filed on the items until August of 1981.

Early in 1982 debtor was found to be in arrears in payment of the amounts due on his contract with Walker-Schork for the Harvester equipment. As a result, Walker-Schork declared the entire contract balance of $25,981.64 due and payable, obtained an order of replevin for the Harvester equipment on or about April 5, 1982 in the Circuit Court of the 16th Judicial Circuit, DeKalb County, Illinois and put itself in possession of the equipment and still currently holds possession.

On April 6, 1982 debtor held a farm sale of substantially all of the farm equipment he owned, including the Case 1370 tractor at issue here. The farm sale produced sale proceeds which were paid and delivered to the First National Bank and Trust Company of Rochelle as Sales Manager. The Rochelle Bank distributed the sum of $11,975.00 to Case for the sale of the Case 1370 tractor.

On May 4, 1982 debtor filed his petition for a reorganization under Chapter 11 of the Bankruptcy Code. Debtor under Section 544 of the Code filed his adversary complaint against Walker-Schork seeking to void its security interest in the Harvester equipment and asked Walker-Schork to turn over said equipment to him so he may turn it over to the Joliet Bank. Secondly, debtor filed his adversary complaint against J.I. Case Credit alleging that the payment of $11,975.00 to Case from the farm sale constituted an illegal preference under Section 547 of the Bankruptcy Code. Debtor seeks to have the proceeds turned over to him and a finding that Joliet Bank has a lien upon the proceeds such that he may turn over the sums to the bank.

## ISSUES

Section 56 of the Federal Rules of Civil Procedure provide the standards for when it is proper to render a summary judgment. Section 56(c) states that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In this case the debtor filed motions for summary judgment against Walker-Schork and J.I. Case Credit. The defendants responded to those motions and filed a joint cross motion for summary judgment. As a result, clearly both parties contend that there are no material issues of fact and this case is ripe for summary judgment in someone's favor. While the party's recitations of the facts are not identical, no material controversy over them exists. Therefore, summary judgment is proper based on a resolution of the following law questions:

1. Whether or not under Section 9–401(1) and (2) of Chapter 26 of the Illinois Revised Statutes, defendants Walker-Schork and J.I. Case Credit have validly perfected security interests in the equipment and proceeds at issue.

2. Whether or not under Section 544 and Section 547 of the Bankruptcy Code, the debtor Johnson can avoid the interests of Walker-Schork and J.I. Case Credit in the equipment and proceeds at issue.

3. Whether or not the Joliet Bank has validly perfected security interests in the equipment and proceeds given sections 9–203(1)(a) and 9–110 of the Illinois Commercial Code.

## DISCUSSION

### 1. Validity of Defendant's Liens

The equipment at issue here is farm equipment used in the debtor's operation of a number of farms in DeKalb and Lee County. Chapter 26 of the Illinois Revised Statutes, Section 9–401(1)(a) clearly states that the proper place to file in order to perfect a security interest when the collateral is equipment used in farming operations is in the office of the Recorder of Deeds in the county of the debtor's residence. There is no dispute as to the fact that the debtor's residence is on Herman Road in the city of Lee, County of DeKalb, Illinois. Further, defendants admit that they filed their financing statements in Lee County and not DeKalb County.

Defendants, however, contend that their filings in Lee County are still effective under 9–401(2) of the Commercial Code which provides that a filing made in good faith in an improper place is nevertheless effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Whether or not defendant's filings were made in good faith is not an issue here and from the facts presented to the court, it would appear such good faith did exist. Since defendants seek to assert a priority interest in the equipment and proceeds in question over the interests of the debtor (and Joliet Bank), it would logically seem necessary that the court determine whether or not under 26 Ill.Rev.Stat. 9–401(2) the debtor had knowledge of the contents of defendants' financing statements. However, given the intervention of the bankruptcy filing, the debtor's powers under Section 544 of the Code operate to eliminate the necessity of a determination as to the debtor's knowledge.

Section 544(a) of the Bankruptcy Code gives the trustee as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of such creditor to avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor on a simple contract with a judicial lien, a creditor with a writ of execution against the property of the debtor and a bonafide purchaser of the real property of the debtor as of the date of the petition.

Section 544(a) is the "strong arm clause" of the Bankruptcy Code, formerly found in section 70c of the Bankruptcy Act. Under 544(a) the trustee may avoid a transfer because of some defect in the creation of a perfected security interest, including a filing defect. Section 544 gives the trustee (and thus the debtor here under Section 1107) the status of a hypothetical lien creditor without knowledge.

Under Section 544(a) there need not be an actual lien creditor without knowledge for the trustee to recover property.

The trustee succeeds to the position of a hypothetical lien creditor without knowledge and, as such, can disregard his or any creditor's knowledge of the improperly filed security interest and can act like that lien creditor, which he is not, to avoid that security interest. In effect, since up to the time of filing the bankruptcy petition, a proper filing was not made by defendants, a lien creditor without notice could have acquired superior rights in the collateral to those unperfected rights of the defendants. Section 544(a) gives the trustee, regardless of his personal knowledge or the knowledge of other creditors, the status of such a lien creditor who has acquired superior rights in the collateral and therefore the trustee is entitled to priority. *In re Babcock Box Co.,* 200 F.Supp. 80 (D.Mass.1961); *In re Komfo Products Corp.,* 247 F.Supp. 229 (E.D.Pa. 1965); *In re Coed Shop, Inc.,* 435 F.Supp. 472 (N.D.Fla.1977), affrm. 567 F.2d 1367 (5th Cir.1978).

As a result, defendants' contentions that their filings are effective as to the debtor under Section 9–401(1)(a) must fail. Section 544 of the Bankruptcy Code explicitly states that the debtor as trustee is to be treated as a lien creditor without regard to any knowledge. Because the debtor must be treated as such, he is not a person who has knowledge of the contents of such financing statement under Section 9–401(2) of the Commercial Code and the defendants' filings are ineffective as to the debtor.

■ Given that defendants' liens are as such unperfected, Section 9–301 of the Commercial Code becomes important. Section 9–301 indicates that the rights of an unperfected security holder are subordinate to those of a lien creditor. Debtor as indicated above, may be deemed a lien creditor under Section 544 of the Bankruptcy Code. Defendants have argued, however, that under 9–301 of the Commercial Code, as amended in 1972 the debtor *can* be charged with knowledge of their filings. Under the amended 9–301 provision, defendants point out that *all* creditors do not have to have knowledge of the lien asserted before the representative of the creditors can be held

to have knowledge thereof. The post 1972 9–301 provision provides that an *actual* lien creditor can not upset a transfer if at the time he became a lien creditor he had actual notice of the unperfected security interest. The problem with defendants' argument is that under Sec. 544(a) of the Bankruptcy Code there need not be and is not an *actual* lien creditor without knowledge to consider; the trustee can disregard his or any creditor's knowledge of the security interest and he can act like the lien creditor which he is not. The trustee succeeds to the position of a hypothetical lien creditor without knowledge and as such (whether or not pre-1972 or post 1972 U.C.C. 9–301 is in effect) he can upset the transaction. He steps into the shoes of a non-existent creditor. 9C *Uniform Commercial Code Service,* Section 9C.06[3][a], 9C–71. Therefore, since defendants' liens were filed incorrectly, they are unperfected and subordinated to the interests of the debtor.

However, debtor here does not seek to recover the goods and proceeds in question simply for the benefit of his estate. Debtor has, instead, asserted that Joliet Bank has a valid and perfected security interest in and to the items in question and seeks the permission of the court to turn over the proceeds or property to said bank. Under these circumstances, the knowledge of Joliet Bank regarding defendants' security interests becomes vital.

As the court has pointed out in great detail, section 544(a) of the Bankruptcy Code gives the debtor as trustee the status of a hypothetical lien creditor *without knowledge.* Therefore, any lien being asserted under 9–401(2) is not effective against a trustee (debtor) in bankruptcy seeking to recover the property for the debtor's estate. In the instant case, however, debtor is seeking to recover the property in order to turn it over to another secured creditor, Joliet Bank. Uncontroverted testimony indicates that Joliet Bank knew of the security interests of the defendants when the bank filed their various financing statements. Further, prior to financing debtor's farming operations each

year, Joliet Bank prepared with the debtor detailed cash flow statements, etc. and thus can be charged with having very specific and explicit knowledge of the debtor's financial obligations. Thus, even though Joliet Bank did not actually see defendants' financing statements until August of 1981, the bank did have the kind of knowledge of those statements contemplated by 9–401(2) as would render defendants' financing statements effective against the bank.

 Had it not been for the intervention of debtor's bankruptcy filing, it seems very clear that under 9–401(2) defendants' improperly filed financing statements would be effective as against the interests of Joliet Bank. To allow Joliet Bank to recover the proceeds and property in question through debtor's strong arm power (11 U.S.C. § 544) whereas it could not recover absent the intervention of the bankruptcy filing would produce a highly inequitable result. Section 544 was designed to aid the trustee (debtor) in recovering property for the estate for the eventual benefit of all creditors. Section 544 was not designed to provide a windfall to one creditor who, had it not been for the bankruptcy filing and debtor's subsequent status as a hypothetical lien creditor without knowledge, would have only a secondary claim on the property and proceeds in question. Courts of bankruptcy are essentially courts of equity and their proceedings are inherently proceedings in equity. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). In order to do equity in this case, Joliet Bank must be charged with the knowledge of defendants' financing statements. Thus, defendant's filings are effective as to Joliet Bank and the property and proceeds are not recoverable under debtor's strong arm power.

*2. Avoidance and Recovery under Section 547.*

In order to recover the property and proceeds in question, the debtor has sought to use Section 547 in conjunction with his Section 544 strong arm power. Section 547 provides that:

(b) ... the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

██ An examination of the requirements of Section 547 of the Code in conjunction with the above 544 analysis and in relation to the facts of this case reveals that the transactions in issue are not voidable preferences. The transfers were made to or for the benefit of creditors and for antecedent debts owed by the debtor before such transfers were made. The transfers were made while the debtor was insolvent, given the 547(f) presumption, and they were made within 90 days before the date of the filing of debtor's petition. However, Section 547(b)(5) requires that the court focus on the relative distribution between classes as well as the amount that will be received by the members of the class of which the preferee is a member. House Report No. 95–595, 95th Cong., 1st Sess. 372 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. As outlined previously, this dispute is essentially between two secured creditors. The debtor seeks to use his 547 powers to recover the property from one creditor and turn it over to another creditor. Had it not been for the existence of the second creditor, Joliet Bank, defendants' interests may have been deemed to be unperfected. However, with the existence of Joliet Bank and said bank's knowledge, defendants' interests are

effective against Joliet Bank under 9–401(2) of the Commercial Code.

As a result, transfers at issue would not enable such creditors to receive more than they would receive if the case were under Chapter 7 or the transfers had not been made. Defendants are fully secured creditors and under Chapter 11 or Chapter 7 they would receive essentially the same thing. No evidence has been presented to indicate that defendants as members of the class of fully secured creditors have received a disproportionate share as between other members of their class or other classes. Therefore, debtor has not proven the section 547(b)(5) requirements and he may not avoid the transfers in question.

### 3. The Interests of Joliet Bank

■ As has been outlined above, defendants' improperly filed financing statements are deemed to be effective as against Joliet Bank under section 9–401(2) of the Commercial Code. The final two questions to answer are 1) whether or not Joliet Bank's interests are valid security interests and 2) what are the relative priorities of the conflicting security interests.

Defendants strenuously argue that Joliet Bank's security interests are not valid under 9–203 of the Commercial Code. Defendants allege that the bank's notes do not constitute valid security agreements and that said notes do not contain an adequate description of the collateral. While defendants' assertions may have merit, the court does not find it necessary to make these determinations. Even assuming Joliet Bank's security interests are perfectly valid under 9–312 of the Commercial Code they do not take priority over defendants' interests. 9–312(4) provides that:

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 10 days thereafter.

The interests of defendants are clearly purchase money security interests, unlike the interests of Joliet Bank. Although the purchase money security interests were perfected improperly, the perfections are effective against Joliet Bank under 9–401(2). Therefore, defendants' interests have priority over the interests of Joliet Bank and thus the bank may not recover the property and proceeds.

## CONCLUSIONS OF LAW

Section 9–401(1)(a) of the Illinois Commercial Code provides that in order to perfect a security interest in farm equipment, a financing statement must be filed in the office of the recorder of deeds in the county of the debtor's residence. Under 9–401(2) a filing which does not comply with this rule but is filed in good faith will be deemed effective against any person who has knowledge of the contents of such financing statement. The debtor in a bankruptcy proceeding who is seeking to avoid liens under Section 544 of the Bankruptcy Code is given the status of a hypothetical lien creditor without knowledge. Therefore, the saving provision of 9–401(2) of the Commercial Code is ineffective against a bankruptcy debtor.

However, Section 544 of the Bankruptcy Code was designed to aid the debtor or trustee of a bankruptcy estate in recovering property of the estate for the eventual benefit of all creditors either through a plan of reorganization or liquidation proceeding. Section 544 was not designed to provide a windfall for creditors who, absent the bankruptcy filing and the trustee's (debtor's) status as a hypothetical lien creditor could not recover the property they seek. Bankruptcy courts are essentially courts of equity and as such must do equity. Therefore, while the trustee (debtor) under Section 544 has the status of a hypothetical lien creditor without knowledge and thus Section 9–401(2) is ineffective as to the trustee, a subsequent creditor claiming an interest in that same property may be charged with knowledge of the contents of the improperly filed financing statement and the filing will be deemed to be effective as to that creditor. As a result, defendants' financing

statements are deemed to be effective as against the interests of Joliet Bank.

Furthermore, section 547 of the Bankruptcy Code provides for the recovery of transfers of property of the debtor to creditors on account of antecedent debts made within 90 days before the filing of the bankruptcy petition which enable such creditors to receive more than they would receive if the case were filed under Chapter 7 or the transfers were not made. Where as here debtor seeks to use his Section 547 powers to recover property from one secured creditor and turn it over to another secured creditor a recoverable preference does not exist. Defendants as fully secured creditors would essentially receive the same thing had this proceeding been filed as a Chapter 7 liquidation or a Chapter 11 reorganization, or the transfers were initially not made at all.

Finally, 9–312(4) of the Commercial Code provides that a purchase money security interest in collateral other than inventory has priority over conflicting security interests in the same collateral so long as the purchase money security interest is perfected at the time the debtor receives the collateral or within 10 days thereafter. Where a purchase money security interest was improperly perfected but such filing is made effective under 9–401(2), that purchase money security interest has priority over a conflicting security interest in the same collateral. As a result, defendants' interests have priority over the interests of Joliet Bank and the bank may not recover the property and proceeds in question.

WHEREFORE, IT IS HEREBY ORDERED that debtor's motions for summary judgment are denied and defendant's Walker-Schork and J.I. Case's joint motion for summary judgment is granted and they may retain the property and proceeds in question.