In re PIRSIG FARMS, INC., Debtor.

**EDWARD PIRSIG FARMS,
INC., Plaintiff,**

v.

**JOHN DEERE COMPANY, Defendant
and Third Party Plaintiff,**

v.

**CONTINENTAL ILLINOIS NATIONAL
BANK & TRUST OF CHICAGO and
First National Bank of Elmore, Third
Party Defendants.**

Bankruptcy No. 3–83–2131.
Adv. No. 3–83–0034.
Civ. No. 4–84–1100.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 8, 1985.

William Kampf, Elizabeth L. Zerby, Sharon N. Fullmer, Kampf, Orey, Landsman & Zerby, St. Paul, Minn., for plaintiff.

Steven J. Kluz, Gene Hennig, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for defendant and third party plaintiff.

Paul Scheerer, Dorsey & Whitney, Minneapolis, Minn., for third party defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's appeal from the September 13,

1984 order of the bankruptcy court granting plaintiff's motion for summary judgment. The Order of the bankruptcy court is affirmed.

## FACTS

The plaintiff in this case is a debtor in bankruptcy, Edward C. Pirsig Farms, Inc. Debtor is a family farming operation doing business in corporate form. Debtor filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code on December 19, 1983. The defendant in this case is the John Deere Company (Deere), and Deere has brought the Continental Illinois National Bank & Trust of Chicago and the First National Bank of Elmore (Banks) into this action as third party defendants.

From November 1, 1979 until December 13, 1982, debtor purchased various pieces of farm equipment from two Deere dealers. Debtor gave the dealers a down payment with the balance of the purchase price to be paid in installments. As part of the purchases, debtor gave the dealers a purchase money security interest in each item of equipment. The dealers also prepared Uniform Commercial Code (UCC) financing statements for each purchase. Each security agreement listed the purchaser as "Edward Pirsig Farms, Inc." All the security agreements were signed "Edward C. Pirsig Farms, Inc." followed by the signature of a corporate officer. Usually the signature of the corporate officer was: "by Edward Pirsig, Pres." Occasionally Pirsig omitted the word "by." Also on several occasions, the signature of the corporate officer was "by David Pirsig, Sec." (David Pirsig is the son of Edward Pirsig.) In addition to the signature of the corporation, the dealers also required that either Edward or David Pirsig sign the security agreement in their individual capacities as co-obligors.

The dealers subsequently assigned their security agreements to Deere, also forwarding the UCC financing statements to Deere. Of the 22 financing statements executed by the debtor, Deere filed all but three with the Faribault County Recorder. Deere filed the remaining three financing statements with the Minnesota Secretary of State's office. At the time Deere filed these 22 financing statements, the proper place for filing financing statements relating to farming equipment of a corporation was the Secretary of State's office. Minn. Stat. § 336.9–401(1)(a) (1982).[1]

On December 19, 1983, subsequent to its purchases of farming equipment from the Deere dealers, debtor filed for bankruptcy under Chapter 11. Shortly after filing the bankruptcy petition, debtor filed a motion for a cash collateral order under 11 U.S.C. § 363(c)(2)(B) (1982) for use of the proceeds of the sale of livestock and its 1983 crop. Debtor had to seek such an order because the Banks had security interests in the 1983 crop and the livestock. After a preliminary agreement and a subsequent four-day evidentiary hearing before the bankruptcy court, the Banks and the debtor entered into a stipulation for use of cash collateral on January 23, 1984. On that day, the bankruptcy court entered an order approving the stipulation.

In the stipulation, the Banks allowed the debtor to use the proceeds from the sale of livestock and the 1983 crops. The Banks also agreed to continue to finance debtor's farming operations by providing more than $727,000 in additional credit. In exchange, debtor had to give the Banks additional liens on debtor's assets. Moreover, the stipulation required that debtor seek to avoid Deere's liens on debtor's farm equipment. If successful, debtor would grant the Banks liens on the property on which Deere had previously had liens.

---

**1.** At the time Deere filed these documents, financing statements relating to farming equipment of individuals were properly filed in the appropriate county recorder's office. Minn. Stat. § 336.9–401(1)(a) (1982). In 1983, the Legislature amended this statute and now the county recorder's office is the appropriate place to file financing statements regarding farm equipment for both individuals and corporations. Minn.Stat. § 336.9–401(1)(b) (1984). All the financing statements in this case, however, were filed before the passage of this 1983 amendment.

On February 1, 1984, debtor initiated an adversary proceeding against Deere seeking lien avoidance under 11 U.S.C. § 544(a) (1982). (Section 544(a) allows debtors to avoid liens which were unperfected before the filing of a petition in bankruptcy.) Deere responded by asserting a third party complaint against the Banks. On September 13, 1984, the bankruptcy court granted debtor's motion for summary judgment, thus freeing debtor from 19 Deere liens on debtor's farm equipment.[2] The bankruptcy court concluded that these 19 liens were unperfected because of misfiling, and therefore section 544(a) allowed debtor to avoid the liens. The bankruptcy court also concluded that the operation of section 544(a) did not constitute a taking in violation of the fifth amendment of the U.S. Constitution. Deere appeals from the September 13, 1984 decision of the bankruptcy court.

## DISCUSSION

All parties in this action agree that 11 U.S.C. § 544(a) (1982) allows a trustee in bankruptcy to avoid liens and security interests against the debtor's estate which were not properly perfected under state law before the debtor filed in bankruptcy. As a debtor in possession, the debtor in this case has all the rights and powers of a trustee, with a few exceptions not relevant here. 11 U.S.C. § 1107(a) (1982). Here, Deere did not properly perfect 19 liens before the debtor filed in bankruptcy. The liens were not properly perfected because Deere filed them in the county recorder's office at a time when the law required that the liens be filed with the Secretary of State's office. See Minn.Stat. § 336.9–401(1)(a) (1982).

Deere argues, however, that to apply section 544(a) to this case would be a mechanical application of the law leading to an inequitable result. Deere states that a bankruptcy court, as a court of equity, should avoid this harsh result. Deere further argues that the application of section

544(a) in this case would constitute a taking in violation of the fifth amendment of the U.S. Constitution.

## EQUITABLE CONSIDERATIONS

Deere points out that bankruptcy courts have traditionally been considered courts of equity. *E.g., Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Matter of Mobile Steel Co.,* 563 F.2d 692, 698–99 (5th Cir.1977). Within the limits of the bankruptcy laws, bankruptcy courts should apply general principles of equity. *See In re Lustron Corp.,* 184 F.2d 789, 793 (7th Cir.1950), *cert. denied,* 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682 (1951). Bankruptcy courts do have the authority to take steps not specifically authorized by the bankruptcy laws because 11 U.S.C. § 105(a) (1982) states that bankruptcy courts may issue any order necessary or appropriate to carry out the bankruptcy laws. Yet section 105(a) does not give bankruptcy courts the authority to contravene specific provisions of the bankruptcy code. *See Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 274 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Wood,* 33 B.R. 320, 322 (Bankr.D.Id.1983).

Deere's first equitable argument is that the bankruptcy court should have considered the 19 liens to have been filed correctly even though Deere did not file them in the Secretary of State's office. Deere reasons that the bankruptcy court should have treated debtor as an individual. (If debtor was in fact an individual, then Deere's lien filings would have been properly perfected before debtor filed in bankruptcy.) Deere supports this argument by claiming that Deere had difficulty determining whether debtor was a corporation or an individual. Deere adds that debtor is actually just a family farm, with family members owning all the outstanding stock. Finally, Deere points to the September 4, 1984 consolidated disclosure statement and

---

**2.** Deere states that these 19 liens represent almost $600,000 worth of security in farm equipment. As of February 1, 1984, Deere states that

debtor owes $581,359.21 on the purchases to which these 19 liens correspond.

plan for reorganization. These documents consolidate the bankruptcy cases of individual members of the Pirsig family with the bankrutpcy case of · Pirsig Farms, Inc. Deere argues that it is inequitable for the Pirsigs to claim to be individuals in these consolidated documents, while they claim that the 19 liens had to be filed in the appropriate place for corporations.

To support its request to treat debtor as an individual for purposes of filing lien statements, Deere relies on a number of piercing the corporate veil cases. *E.g.*, *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979). Minnesota courts will disregard the corporate entity when justice so requires. *See Victoria Elevator*, 283 N.W.2d at 512. Yet, a number of factors must be present before a court will pierce a corporate veil, such as failure to observe corporate formalities or the major shareholder siphoning off corporate funds. *Victoria Elevator*, 283 N.W.2d at 512. Moreover, "an element of injustice or fundamental unfairness" must be present before the corporate entity will be disregarded. *Victoria Elevator*, 283 N.W.2d at 512. At the very least, this last prerequisite requires "that the corporate entity has been operated as a constructive fraud or in an unjust manner...." *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn. 1982).

■ Here, Deere has made no showing or allegation that debtor failed to observe corporate formalities or that a member of the Pirsig family siphoned off corporate funds. Neither does the consolidation of bankruptcy proceedings for individual members of the Pirsig family with the bankruptcy proceedings for the corporation support the conclusion that Pirsig Farms, Inc. was not operating as a corporation at the time Deere filed the liens in question. Subsequent bankruptcy proceedings are simply irrelevant to the issue of how the

corporation was being operated at the time Deere filed its liens.

Moreover, Deere cannot realistically claim that it did not realize that it was dealing with a corporate entity when it sold debtor the farm equipment. All the agreements listed the purchaser as "Edward Pirsig Farms, Inc." The signatures on the documents were signatures of a corporation, followed by the signature of a corporate officer. Deere also required that either Edward or David Pirsig sign in an individual capacity as a co-obligor. This step is necessary here only if the other co-obligor is a corporation. Finally, Deere did file three financing statements in the correct location for liens on corporate farm assets. Thus, Deere, a sophisticated and experienced creditor, knew that it was dealing with a corporation.[3]

■ Deere next argues at length that the bankruptcy court's granting avoidance of Deere's liens was inequitable because debtor did not need to avoid the liens in order to continue operating its farm. A debtor's use of section 544(a), however, is not contingent upon a finding that the lien avoidance is necessary for continued operations. Avoiding unperfected liens benefits the entire estate of the debtor. The debtor, moreover, owes a fiduciary duty to the estate. Consequently, not only can the debtor seek to avoid unperfected liens regardless of the necessity of the avoidance, the debtor has an obligation to the estate to seek lien avoidance. Bankruptcy court's September 13, 1984 order, at 7.

Many of Deere's equitable arguments ignore the fact that debtor's avoiding Deere's lien benefits debtor's entire estate. Deere attempts to characterize this case as a contest between it and the Banks. True, the Banks will benefit by debtor's avoiding Deere's liens. Yet, as previously stated, debtor had the right and duty to avoid

---

**3.** Debtor and the Banks also argue that Deere should not be able to raise piercing the corporate veil arguments because Deere's statement of issues on appeal does not raise such arguments. However, Deere's piercing arguments

possibly fall under Deere's general equitable challenge to the bankruptcy court's application of section 544(a). In either case, Deere's piercing arguments do not help Deere.

Deere's liens in order to benefit the entire estate.

■■■ In its effort to cast this case as a contest between itself and the Banks, Deere argues that the Banks will inequitably benefit from debtor's lien avoidance. Deere points to Minn.Stat. § 366.9–401(2) (1982). That section provides that even a misfiled financing statement will be effective against subsequent financing statements *if* the person filing the latter statement had knowledge of the prior statement. Deere reasons that because the Banks knew of Deere's liens, then Deere's liens should still be effective against the Banks.[4] This argument overlooks, however, that the debtor, and not the Banks, is seeking to set aside Deere's liens. Under Minnesota law, unperfected liens such as Deere's are not effective against a bankruptcy trustee. Minn.Stat. § 336.9–301(3) (1982). (Debtor, as a debtor in possession, has all the rights of a trustee.) Moreover, 11 U.S.C. § 544(a) (1982) grants the trustee the status of a lien holder without notice. *See* S.Rep.No. 989, 95th Cong., 2d Sess. 85, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5871; H.R.Rep. 595, 95th Cong., 1st Sess. 370 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6326; *In re Brent Explorations, Inc.*, 31 B.R. 745, 748–49 (Bankr.D.Colo.1983); 4 *Collier on Bankruptcy* ¶ 544.02 (15th ed. 1984). Thus, the party which is seeking to avoid Deere's liens, *i.e.*, the debtor, cannot be on notice of Deere's unperfected liens because section 544(a) statutorily determines that the debtor does not have such notice. *See, e.g., In re Morse*, 30 B.R. 52, 54 (1st Cir.Bankr.App. Panel 1983).

■■■ Deere argues, however, that even if the law allows debtor to avoid Deere's liens, the bankruptcy court should have used its equitable powers to prevent this harsh result (*i.e.*, Deere losing more than $500,000 because of 19 misfilings). Deere

argues that no creditor was harmed by the misfiling of the financing statements. Yet, a debtor in its role as trustee does not have to establish that any creditor was harmed by the failure to perfect a lien before the debtor can avoid the unperfected lien under section 544(a). *See In re Great Plains Western Ranch Co., Inc.*, 38 B.R. 899, 904 (Bankr.C.D.Calif.1984). Moreover, a bankruptcy court's equitable powers do not allow a bankruptcy court to contravene clear statutory provisions. *See, e.g., Bank of Montevideo*, 719 F.2d at 274. In fact, neither equity nor estoppel doctrines limit a trustee's avoiding powers under section 544(a). *Brent Explorations*, 31 B.R. at 745, 748–49 *cf. also Morse*, 30 B.R. at 54 (*personal* knowledge of trustee irrelevant).

■■■ Still, Deere cites three cases for the proposition that a bankruptcy court can use its equitable powers to avoid unjust results under section 544(a) in the case of misfiled liens. *Loye v. Denver United States National Bank*, 341 F.2d 402 (10th Cir.1965) and *In re Mitchell*, 104 F.Supp. 969 (N.D.Ohio 1952), *aff'd*, 202 F.2d 426 (6th Cir.1953), both involved banks which had liens on automobiles. Title and security interests in the automobiles were governed by the respective state vehicle registration acts. In those states any interest in an automobile would appear on a certificate of title. The banks in both cases obtained their liens before the debtor filed in bankruptcy. The trustees in both cases were able to set aside the liens because of misfilings. Yet, both banks ultimately prevailed on appeal. The banks prevailed *not* because the respective courts used their equity powers to set aside the lien avoidances. Rather, the courts in both cases determined as a matter of state law that the banks' liens were in fact properly perfected. *Loye*, 341 F.2d at 405 (Colorado law); *Mitchell*, 104 F.Supp. at 972 (Ohio law). (*Mitchell*, 104 F.Supp. at 972–73, did mention some equitable considerations in dicta,

---

**4.** Deere is certain that the Banks had actual knowledge of Deere's liens, but Deere does not point to anything in the record to confirm this conclusion. Nevertheless, because debtor prevailed on a summary judgment motion, the

Court must accept Deere's claim that the Banks had actual notice as true. *E.g., Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.*, 741 F.2d 1142, 1144–45 (8th Cir.1984).

though.) Thus, *Loye* and *Mitchell* do not offer much support to Deere's claim that bankruptcy courts can restrict section 544(a).[5]

On the other hand, *In re Johnson*, 28 B.R. 292 (Bankr.N.D.Ill.1983), does offer support for Deere's invocation of equity. In *Johnson*, a farm equipment dealer sold equipment to a farmer by means of a retail installment contract and a security agreement. The seller, however, filed the UCC financing statements in the wrong county recorder's office. A bank later obtained a non-purchase money lien in the same equipment. Subsequently, the purchaser filed a Chapter 11 petition in bankruptcy. The purchaser, now the debtor, sought to avoid the seller's unperfected lien under 11 U.S.C. § 544(a) (1982). The court concluded that the debtor, regardless of his knowledge, could avoid the unperfected liens if debtor had sought to benefit his estate. *Johnson*, 28 B.R. at 296. The debtor, though, was seeking to turn over the property serving as collateral directly to the bank. Thus, the court concluded that the debtor was not seeking to benefit his estate, but instead was seeking to benefit the bank. The court concluded, therefore, that it would examine the knowledge of the bank. *Johnson*, 28 B.R. at 296. Under UCC 9–401(2) (which Illinois has adopted and which is identical to Minn.Stat. § 336.-9–401(2) (1982)), an unperfected lien is still effective against a subsequent lienholder with knowledge. The court found that the bank did have knowledge of the seller's lien. Thus, the court would not allow the debtor to use section 544(a) to avoid seller's lien to the benefit of the bank. *Johnson*, 28 B.R. at 297. The court reasoned that it was a court of equity, and to allow the lien avoidance in this situation would be an unjustified windfall for the bank. *Johnson*, 28 B.R. at 297.

Debtor in the case before this Court correctly points out, however, that *Johnson* is distinguishable. In *Johnson*, the debtor was going to turn property directly over to the bank, while here debtor is merely granting the Banks a lien. In addition, debtor here seeks to avoid Deere's liens to benefit the entire estate.[6] By avoiding Deere's liens, debtor seeks to generate a source of adequate protection which it can exchange with the Banks for operating funds. (As stated, the Banks have already given debtor operating funds, and in exchange, debtor had to give the Banks certain adequate protection and seek to avoid Deere's liens.) True, the Banks will benefit if debtor is able to avoid Deere's liens, although the benefit is less direct than the banks' benefit in *Johnson*. In *Johnson*, moreover, there is no indication that the bank gave anything to the estate in exchange for the debtor's attempt to avoid liens. Thus, while the banks in *Johnson* may have had a windfall because they gave no consideration, here the Banks do not have a windfall because they did give consideration for the liens.

In sum, because the debtor is seeking to benefit the entire estate by avoiding Deere's liens, the rationale set forth in *Johnson* itself leads to the conclusion that *Johnson* does not apply to the case at bar.

Even if the Court would have found *Johnson* indistinguishable, the Court would refuse to follow *Johnson* in the present case. Section 544(a) provides that a debtor has the status of a creditor without knowledge. Yet in *Johnson* the court imputed the knowledge of a creditor (the bank) to the debtor. *Johnson*, in effect, relied on equitable principles to finesse section 544(a), but bankruptcy courts cannot use their equitable powers to controvert the clear meaning of statutes. *Bank of Montevideo*, 719 F.2d at 274. Therefore, re-

---

**5.** Debtor's brief assailed *Loye* and *Mitchell* by arguing that because the state of the title of automobiles appeared on the title certificate, a creditor who was unaware of a prior security interest could never exist. Presumably, this situation is in contrast to misfiled UCC financing statements, where unaware creditors can exist.

**6.** The bankruptcy court found that debtor seeks to avoid Deere's liens to benefit the entire estate and the Court agrees.

gardless of whether *Johnson* is applicable, the Court rejects Deere's equitable arguments.

**TAKING**

 In addition to arguing that equitable considerations dictate that debtor cannot utilize section 544(a), Deere also seeks to void this application of section 544(a) as a taking in violation of the fifth amendment to the U.S. Constitution.

Congress has broad authority to establish bankruptcy laws under Article I, Section 8, Clause 4 of the U.S. Constitution. Even so, "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). Deere accurately points out, moreover, that a security interest in personal property does constitute a property interest. *E.g., Security Industrial Bank,* 103 S.Ct. at 411.

Deere's argument is essentially that section 544(a) is destroying the property interest Deere had in its liens against debtor's farm equipment. Under Minn.Stat. § 336.-9–401(2) (1982), even improperly filed liens are effective against subsequent lienholders with notice. Thus, but for section 544(a), concludes Deere, Deere's liens would still be effective against debtor and the Banks. Deere relies heavily on *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) for the proposition that a bankruptcy law violates the taking clause if it destroys the lien interest of a debtor. *See Radford,* 295 U.S. at 589–90, 55 S.Ct. at 863–64. Deere then proceeds to analyze the "taking" of its security interest under the framework suggested in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). (Deere argues that section 544(a) interfered with its investment-backed expectations, impacts substantially on Deere, and does not promote the public good.)

Debtor correctly points out, however, that *Radford* involved a *retroactive* application of the bankruptcy law. In *Radford,*

a bank had properly perfected a mortgage interest in a farm. The bankruptcy law under which debtor sought to circumvent the bank's lien was passed after the bank's lien came into existence. The Supreme Court concluded that this retroactive application of the law constituted a taking. *Radford,* 295 U.S. at 590, 602, 55 S.Ct. at 863, 869. Similarly, in *Security Industrial Bank,* the Supreme Court was concerned "whether the retroactive destruction of the [creditors'] liens" violated the taking clause. *Security Industrial Bank,* 103 S.Ct. at 412. By contrast, section 544(a) was in existence before Deere ever sold farm equipment to the debtor. Therefore, the concerns of a retroactive application of bankruptcy laws destroying lien interests are simply not present in this case.

Moreover, section 544(a) has not acted to take any rights of Deere. Deere's property rights in its liens derived from Minnesota state law. Under Minn.Stat. § 336.9–301(3) (1982), Deere's unperfected liens were not effective against a trustee in bankruptcy. Thus, section 544(a) is not depriving Deere of any rights Deere had under state law. Deere's failure to perfect its liens, not section 544(a) caused Deere to lose its security interests. *See In re Washburn & Roberts, Inc.,* 17 B.R. 305, 308 (Bankr.E.D.Wash.1982) (failure to record deed, not subsequent enactment of section 544(a)(3), caused creditor to lose lien interest). Therefore, the Court concludes that no taking in violation of the fifth amendment has occurred.

Based on the foregoing, **IT IS ORDERED** that the September 13, 1984 order of the bankruptcy court is affirmed.