**In the Matter of Earle DAVIDOFF, Bankrupt.**

**No. 71–B–1006.**

United States District Court,
S. D. New York.

Sept. 5, 1972.

Patrick J. Finnegan, Nyack, N. Y., for petitioner Bankers Trust of Rockland County.

Pirraglia & Rosenblatt, by Robert H. Rosenblatt, Yorktown Heights, N. Y., for respondent Dentsply International, Inc.

Milton M. Kase, New City, N. Y., for bankrupt.

David Peterman, Yonkers, N. Y., for Trustee.

## MEMORANDUM AND ORDER

### BRIEANT, District Judge.

Petitioner Bankers Trust Co., successor in interest of The First State Bank of Rockland County ("Bank"), has petitioned to review an order dated June 15, 1972 by the Hon. Howard Schwartzberg, a Referee in Bankruptcy of this Court. The Order, made after a hearing, and upon a written decision of the learned Referee, his Findings of Fact and Conclusions of Law, all dated June 5, 1972, denied in all respects a reclamation proceeding by the Bank with respect to certain dental equipment pledged to it to secure a loan in the amount of $25,000.00. The bankrupt is a practicing dentist who filed a voluntary petition on October 15, 1971. A respondent, Dentsply International, Inc., ("Dentsply") claims a valid security interest in the same equipment and successfully opposed the Bank's application.

The issue raised is cogently stated by the learned Referee in his Certificate of Review dated June 27, 1972, as follows:

" . . . whether the respondent assignor (Dentsply) who properly filed its financing statement with respect to certain of the bankrupt's equipment, is deemed to have knowledge of the contents of petitioner's improperly filed financing statement within the meaning of U.C.C. § 9–401 (2) if it is shown that the respondent's assignor then knew that most of the bankrupt's equipment had been covered by chattel mortgages held by the petitioner and another creditor; there being no evidence that the respondent or its assignor had either seen petitioner's improperly filed financing statement or had knowledge that it was filed."

The Referee, after taking testimony and making findings, treated the issue as a question of law, based upon his interpretation of the statute, § 9–401 (2) of the Uniform Commercial Code, which reads, in relevant part, as follows:

9–401 *Place of Filing; Erroneous Filing; Removal of Collateral.*

\* \* \* \* \* \*

"(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless . . . effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement."

The Referee found that the Bank had filed its financing statement, Form UCC-1, in the Clerk's Office in Rockland County, New York, in a timely manner, and prior to the lien created by the bankrupt in favor of Dentsply, but that the Bank failed to perfect its security interest by dual filing with the Department of State of the State of New York, at Albany, as required by § 9-401(1)(c) of the Uniform Commercial Code. The Bank's financing statement is dated July 21, 1969 and arises out of cash advanced on an installment promissory note on that date. The bankrupt used some of the money he borrowed from the Bank to pay Hebard Dental Supply Co., Inc., Dentsply's assignor, for part of a quantity of dental equipment delivered to the bankrupt on July 21, 1969.

The bankrupt testified, and there was sufficient evidence before the Referee to support a finding that he had then informed one Zuckerman, a principal of Hebard, that most of his equipment was "chattled" in favor of the Bank (and another Bank) and further that the financing statement Form UCC-1 and related documents in favor of Hebard were signed not on July 21, 1969, but in late October or early November of that year, and were originally undated. This seems likely, because it was not until November 20, 1969 that Hebard applied $14,000.00 out of net loan proceeds of $30,000.00 to its account with the bankrupt, and paid him the balance of $16,000.00, representing money furnished to Hebard by Dentsply as consideration for the assignment of the bankrupt's note, financing statement and security agreement in favor of Hebard. See Exhibit 6. It is said that "Hebard" filed in November, 1969 (¶ 5 of Dentsply Petition, verified February 3, 1972) although, if the date on the purported assignment by Hebard to Dentsply is to be believed, the security interest was assigned to Dentsply by Hebard, without recourse, on July 21, 1969. See Exhibit I. Unless we are to infer that a corporation, Dentsply International Inc., actively engaged as a secured lender on dental machinery would hold a financing statement unfiled, from July 21st until November 14th, we may well conclude that the bankrupt testified truthfully when he said, in direct conflict with respondent's witnesses, that the Hebard papers were signed in November. It is equally reasonable to conclude that in connection with the proposed Hebard-Dentsply transaction in November, the bankrupt wrote the Bank (Exhibit F, dated November 3, 1969) asking the Bank to "release the chattel" on seven listed items of dental equipment in contemplation of their pledge to Dentsply through Hebard. Common sense suggests that the bankrupt, in November, knew he could not pledge the same items with two lenders, and informed Hebard's officer Zuckerman of the fact that "Everything in the office is chattled" (Min. 4/18/72 p. 18) and "I told him that the First State Bank had held the mortgage on that equipment." (*ibid*, p. 63), and again "I says, 'well, everything I had is hocked lock, stock and barrel', I says, 'between First National City and Bankers Trust which was then I think First State Bank'" (*ibid*, p. 69).

The learned Referee did not resolve the issue of credibility necessary to find whether Dentsply's assignor, Hebard, by its officers, when it attempted to perfect its own security interest, had actual notice of the fact that the bankrupt had previously created a security interest in favor of the Bank. Rather, he held that ". . . petitioner has failed to establish that Hebard, and therefore the respondent, had knowledge of the contents of petitioner's imperfectly filed financing statement. Hebard's knowledge that most of the bankrupt's equipment was covered by a chattel mortgage given either to First National City Bank or the respondent, even if accepted as an established fact, does not constitute knowledge of the contents of petitioner's financing statement." (Finding No. 19)

We believe this interpretation of U.C.C. § 9-401(2) is too narrow and literal, and does not represent the law of New York with respect to actual no-

tice as compared with constructive notice. Rather, the New York rule is as stated in the New York Annotations to § 9–401 of the Uniform Commercial Code, "In New York one with actual notice cannot successfully defeat an adverse interest on the ground of improper filing." (McKinney's Consol.Laws Book 62½, Part 3, p. 556).

It appears that Hebard, on the Bank's version of the facts, had all the knowledge which it would have had if its officer had visited the County Clerk's Office and read the statement. It had actual notice of the "contents of such financing statement" within the meaning of U.C.C. § 9–401(2). Such a reading would have shown those facts, and only those facts set forth on New York Standard Form UCC–1, that is, the debtor's name and address, the secured party's name and address, and the type of property. If all this information was specifically imparted to Hebard, as the record indicates, then that is enough in New York to create actual notice, just as if Hebard's principals had read a copy of the improperly filed statement.

The status of a trustee in bankruptcy as a lien creditor without notice is not involved in this case; rather we have a dispute between two secured creditors to be resolved in accordance with state law, just as if no bankruptcy existed. Dentsply, the prevailing party below, in effect asserts that one may knowingly perfect a security interest in New York even when he knows that two other creditors hold security interests in the same property, so long as he does not learn of the fact of improper filing, or see a copy of that which is filed. This novel theory must be rejected.

Rather, we rely on § 1–103 of the Uniform Commercial Code in New York, which reads in part as follows:

§ 1–103 *Supplementary General Principles of Law Applicable.*

"Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant, and the law relative to . . . estoppel, fraud . . . or other validating or invalidating cause shall supplement its provisions."

As correctly noted by the New York Annotator, supra, actual notice of an outstanding equity prevents perfecting a security which will become, by correct filing, superior to such outstanding equity. As stated in Beneficial Finance Co. v. Kurland Cadillac-Olds, Inc., 32 A.D.2d 643, 300 N.Y.S.2d 884 (2d Dept. 1969) "The purpose of the notice-filing statute is to give protection to a creditor by furnishing to others intending to enter into a transaction with the debtor a starting point for investigation which will result in fair warning concerning the transaction contemplated (citations omitted)." Here, the debtor gave Hebard all that notice and warning which proper filing could have given.

As stated in 42 N.Y.Jur. 399:

"A cardinal principle of the law of notice is that the means of knowledge, coupled with a duty to make inquiry, are equivalent to knowledge itself. Whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. It is a general rule that where there is a duty to investigate, if a person has knowledge of such facts as would lead a fair and prudent man using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts which, to the mind of a man of ordinary prudence, begets inquiry, is actual notice, or in other words, is the knowledge which a reasonable investiga-

tion would have revealed. Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself."

Analogous are cases involving conflicting equities in real property. In Bird v. Salt Hill Corp., 282 App.Div. 1047, 128 N.Y.S.2d 125 (2d Dept. 1953), aff'd 2 N.Y.2d 1000, 163 N.Y.S.2d 613, 143 N.E.2d 348, a plaintiff was permitted to enforce a restrictive covenant which did not appear in his chain of title (cf. Buffalo Acad. of the Sacred Heart v. Boehm Bros., 267 N.Y. 242, 196 N.E. 42) because defendant had actual notice, through a title abstract, of its existence in another deed. At least on matters of actual knowledge, equity does not distinguish between real and personal property. Section 1—203 of the Uniform Commercial Code imposes an obligation of good faith in the enforcement of every contract "or duty" under the Act. The quoted words "or duty" were added to make it clear that third parties as well as parties to a contract have an obligation of good faith.

Under the circumstances of this case, it was not good faith to impose a security interest on assets which the debtor had already said were secured to two named banks. See U. S. v. Thompson, 272 F.Supp. 774 (E.D.Ark., 1967) [Part II at p. 780].

On review, the order dated June 13, 1972 is hereby annulled and set aside and the petition of Banker's Trust Company of Rockland County is remanded to the Referee to make findings of fact and conclusions of law so as to dispose of the issues between the rival secured claimants in a manner not inconsistent with the foregoing. As the Referee heard the witnesses and observed their demeanor, and we did not, we made no findings of fact with respect to the disputed testimony. As we read the Referee's decision, he disposed of the issues as a matter of law, without resolving fully the issues of credibility raised by the disputed testimony.

So ordered.