**In the Matter of Richard Edward RUF, Debtor.**

**BANK OF HOLMEN, Plaintiff,**

v.

**Richard Edward RUF, Defendant.**

**Adv. No. 82–0312.**

United States Bankruptcy Court, W.D. Wisconsin.

July 27, 1983.

not permit states to preempt other subsections

Alan Peterson, Steele, Klos & Flynn, Chartered, La Crosse, Wis., for plaintiff.

Gene B. Radcliffe, Radcliffe & Laabs, Black River Falls, Wis., for defendant.

MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

In this adversary proceeding the court is asked to determine the priority of two creditors each claiming a security interest in the proceeds of debtor's crops. The Bank of Holmen ("Bank") made a loan to the debtor Richard Ruf, enabling him to plant his 1981 crops. The Bank took a security interest in the crops, and on June 9, 1981 the Bank filed a financing statement in La Crosse County. In September of 1981 Barlow Chemical and Fertilizer ("Barlow") took a security interest in the crops growing on the same land, and filed its financing statement in La Crosse County on September 22, 1981. The land on which the crops were

of Section 522.

growing, however, was in Jackson County, not La Crosse County where both creditors had filed.

The first indication the parties had of their erroneous filings and competing security interests came on February 4, 1982. The debtor had harvested and sold a small portion of the crops subject to the security interest. On February 4 the debtor brought to the Bank a check from the Commodity Credit Corporation listing the debtor, the Bank, and Barlow as joint payees. The debtor's explanation to a Bank officer as to why Barlow was listed on the check was unclear. The officer then contacted Barlow who claimed a security interest in the crop proceeds. There was no evidence that Barlow said anything specific about filing in La Crosse County. Checking his own records and the Jackson County Register of Deeds, the Bank officer realized that the Bank's June 22 financing statement had been misfiled in La Crosse County. On February 5, 1982 the Bank filed a financing statement in Jackson County.

Under the Wisconsin enactment of the U.C.C., a security interest in growing crops must be filed in the office of the register of deeds both in the county of the debtor's residence and in the county where the crops are located, Wis.Stat. § 409.401(1)(a).[1] Thus, at the time the debtor took the check into the Bank, neither party had a perfected security interest. The Bank asserts priority in the crop proceeds based on its February 5 filing in Jackson County. *See* Wis. Stat. §§ 409.301(1)(a) and .312(5). Barlow, however, relies on Wis.Stat. § 409.401(2) to subordinate the Bank's perfected interest:

A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

No Wisconsin cases applying U.C.C. § 9–401(2) have been found. However, courts in a number of other jurisdictions have considered this section. Both courts and commentators have noted that the language of § 9–401(2) potentially encompasses a broad range of "knowledge."[2] The section could mean that misfiling will be excused only when another creditor has actually seen the improperly filed financing statement. On the other hand, it may mean that a creditor who has misfiled is protected when other creditors merely have some knowledge of that competing security interest. *See* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 2.12[3] at 2–65 (1980), *Security National Bank & Trust Co. v. Dentsply Professional Plan.,* 29 U.C.C.Rep. 1686, 1691 (D.Okla. 1980). The facts of the present case place it somewhere in the middle of this range of "knowledge." Although the Bank never saw Barlow's financing statement, it knew of Barlow's claimed security interest in the crop. When presented with such facts, courts have taken one of two diverging views.

One of the leading cases on this question is *In Re Davidoff,* 351 F.Supp. 440 (S.D.N.Y.1972). A bank had filed in one, but not both of the places necessary to perfect. A supplier later took a security interest in some of the same collateral and filed properly. The bankruptcy referee found that the supplier's knowledge of the bank's com-

---

1. Wis.Stat. § 409.401(1)(a) provides:
   The proper place to file in order to perfect a security interest is as follows:
   (a) When the collateral is equipment used in farming operations, or farm products, or accounts or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the register of deeds in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the register of deeds in the county where the goods are kept, and in addition when the collateral is crops growing or to be grown in the office of the register of deeds in the county where the land is located.

2. For purposes of the U.C.C., "knowledge" is defined in Wis.Stat. § 401.201(25a): "A person 'knows' or has 'knowledge' of a fact when the person has actual knowledge of it."

peting security interest was not sufficient knowledge to make § 9–401(2) applicable. The district court reversed, finding that the supplier knew all of the same information that it would have learned if it had actually seen the financing statement. Specifically the supplier knew the debtor's name and address, the secured party's name and address, and the type of property; the court found that adequate to create actual notice. *Id.* at 443. Other cases following *Davidoff* include *In Re Mistura, Inc.,* 22 B.R. 60 and 24 B.R. 586, 34 U.C.C.Rep. 768 (Bkrtcy.App. 9th Cir.1982), *In Re Enark Indus., Inc.,* 86 Misc.2d 985, 383 N.Y.S.2d 796, 19 U.C.C. Rep. 685 (Sup.Ct.1976). *See also Security National Bank & Trust,* 29 U.C.C.Rep. at 1691, *In Re Komfo Products Corp.,* 247 F.Supp. 229, 236 (E.D.Pa.1965).

The other line of cases appears to require more knowledge, though no case requires that an individual actually see the financing statement. In *In Re County Green Ltd. Partnership,* 438 F.Supp. 693 (W.D.Va.1977) the bankruptcy court had held that where a bank received a copy of the security agreement given by the debtor to another creditor, the bank had knowledge within the meaning of U.C.C. § 9–401(2). The district court reversed, stating:

> Although, in an appropriate case, by circumstantial evidence, it may be proved as a matter of fact that a party has actual knowledge of the contents of a financing statement, it is apparent that this case fails to present that question. It is manifest that the conclusions reached by the Bankruptcy Court were, in essence, legal conclusions whereby it equated knowledge of the security agreement and its contents with knowledge of the contents of the financing statement. To make such a determination is improper. The Uniform Commercial Code is a carefully planned and systematic compilation of logic and experience. Words are painstakingly defined and used in accordance with their intended impact on the everyday commercial transaction. A security

agreement is not the same thing as a financing statement. Had the legislature intended for knowledge of a security agreement to be the same as knowledge of the contents of a financing statement it could have said so. Furthermore, such an expanded reading of [U.C.C. § 9–401(2)] tends to circumvent the pure race aspect of [U.C.C. § 9–312(5)]. For these reasons the Court has concluded that First and Merchants lacked knowledge of the contents of the financing statement within the contemplation of [U.C.C. § 9–401(2)]. . . .

*Id.* at 697–98. The court did not cite *Davidoff,* and its decision appears to conflict with that case. In *United States v. Waterford,* 29 U.C.C.Rep. 1680 (Ga.1980) a creditor knew the identity of the debtor, the competing creditor and the property in which the creditor claimed a security interest. The court simply stated that: "[k]nowledge of the claim of a security interest is not equivalent to knowledge of the contents of a financing statement." 29 U.C.C.Rep. at 1681, citing J. White and R. Summers, *Handbook of the Law Under the U.C.C.* § 23–15 (1972). *See also Garden City P.C.A. v. International Cattle Systems,* 32 U.C.C.Rep. 1207 (D.Kan.1981).

Thus, the courts are split, and neither *Davidoff* nor *County Green* can be identified as the majority rule. The language of the statute, "knowledge of the contents of such financing statement," does support the *Davidoff* approach. On the other hand, the concern expressed in *County Green,* that a broad reading of the statute undercuts the pure race approach of article 9, is a valid one.

The present case differs from those discussed above, in that there were two erroneous filings[3] followed by a correct filing. When neither party had properly perfected, the Bank had priority because its security interest was first to attach. *See* Wis.Stat. § 409.312(5)(b). If by filing, the Bank triggered the operation of § 409.401(2), subordinating its priority, a peculiar irony would

---

**3.** The Bank makes no contention that Barlow should be subordinated pursuant to § 9–401(2)

because Barlow had knowledge of the bank's erroneous filing.

result. The Bank would have harmed its position by filing a financing statement, the very act of perfection prescribed by the Code. No provision of the U.C.C. would seem to specifically save the Bank from this strange and certainly unintended result.

One case which presented a similar problem is *First National Bank and Trust, Wibaux v. First National Bank of Greybull,* 582 F.2d 524 (10th Cir.1978). There the court departed from a strict application of the U.C.C. to avoid what it perceived to be an unfair result. A Montana Bank had taken a security interest in equipment and inventory, filing properly in Montana. Debtor then moved the collateral to Wyoming and granted a Wyoming Bank a security interest in the same property. The Wyoming Bank filed in the wrong office, and the Montana Bank's security interest lapsed after four months. Each bank then learned of the other's competing security interest and financing statement. The Montana Bank filed in Wyoming, then the Wyoming Bank filed correctly in Wyoming. The Wyoming Bank relied on U.C.C. § 9–401(2) to subordinate Montana Bank's first correct filing. The Tenth Circuit however, refused to apply that Code section to the facts before it, stating:

> Our attention has not been directed to any Wyoming case law interpreting the statute concerning the effect to be given an improper filing. However, the statute cannot in our view be given the literal interpretation urged here by the Wyoming Bank. It would appear to us that the intent of the statute was to preclude a party who has knowledge of an existing financing statement which had been filed in an improper place from *thereafter* obtaining a financing statement and security agreement covering the same collateral, properly filing the same in the appropriate office, and thereby obtaining a superior creditor interest in the collateral. That, however, is not the instant case. Certainly the statute has no application to a party who, *prior* to obtaining knowledge of the contents of a financing statement of another, has himself received such a statement on the same property and who, again prior to obtaining knowledge of the financing statement of the other party, has already perfected his security interest by filing with the proper office. We think the same rule should apply to a party who, *prior* to obtaining knowledge of the contents of a financing statement held by another, has himself already received a financing statement on the same property, and who, after receiving knowledge of the other party's financing statement, thereafter proceeds to perfect his security interest by a filing with the proper office. To hold to the contrary would mean that by filing in an *improper* place a creditor whose secured interest is junior in time could jump ahead of a senior creditor's interest which was filed in the *proper* place. This to us would be an incongruous result. For a general discussion of the effect of a filing made in an improper place, and relative priorities among secured creditors, see J. White and R. Summers, Uniform Commercial Code, at 829–33, 903–13 (1972). The suggestion there is that the statute relating to filing in an *improper* place should be narrowly construed lest it swallow up the general rule that the superior creditor's interest is the one *first* filed in the *proper* place.

*Id.* at 526–27 (emphasis in original).

Although the distinction made by the Tenth Circuit Court of Appeals between the typical case where a creditor files only after learning of another's improper filing and the facts presented in *Greybull* has been criticized as having no basis in the U.C.C.,[4] no higher court or court which would provide controlling precedent in this case has suggested that the U.C.C. should be interpreted so as to have one of two improperly perfected security interests elevated to a position of priority upon the proper perfection of the other. The present case is little

---

4. *See* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 2.12[3] at 2–66 (1980).

different from *Greybull.* The Bank of Holmen was never properly perfected, as the Montana Bank had been, but it held a priority similar to that held by the Montana Bank prior to its Wyoming filing. Both held unperfected security interests which were prior in time to competing security interests which were unperfected due to misfiling. It seems unfair in both cases that the attempt to cure the filing error should trigger subordination under U.C.C. § 9–401(2). Furthermore, it is important that the public policy which supports giving notice of interests in property by filing should not be undercut by a holding in this case which would impose a penalty upon undertaking the prescribed filing.

Upon the foregoing which constitutes my findings of fact and conclusions of law in this proceeding, it is hereby

ORDERED that plaintiff the Bank of Holmen may have judgment in accordance with the demand of its complaint.