The CITIZENS STATE BANK, Defendant-Appellant,

v.

The PEOPLES BANK, Plaintiff-Appellee,

Kenneth E. Bode, Defendant-Appellee.

No. 1–484 A 93.

Court of Appeals of Indiana, First District.

March 12, 1985.

Joseph K. Markel, Markel, Markel & Markel, Brownstown, for appellant.

Jeffrey A. Nierman, Nierman & Nierman, Brownstown, for the Peoples Bank.

Steven L. Sitzes, Sharpnack, Bigley, David & Rumple, Columbus, for Kenneth E. Bode.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, The Citizens State Bank (Citizens), appeals from a judgment of the Bartholomew Circuit Court determining plaintiff-appellee, The Peoples Bank (Peoples), possessed a lien superior to that of Citizens on personal property of Kenneth Bode (Bode) in Peoples' action to foreclose on a promissory note and security interest in Bode's farm equipment.

## STATEMENT OF THE FACTS

The facts are undisputed. In November 1979, Bode, a resident of Bartholomew County, executed an installment note and security agreement with Peoples. A financing statement was prepared and improperly filed with the Recorder of Jackson County by Peoples on November 9, 1979, in spite of the fact that the instrument had Bartholomew County written on it and Bode lived in Columbus. A list of farm

equipment owned by Bode and located in Bartholomew County was attached to the security agreement.

At some time Bode also executed a promissory note with Citizens concerning his consignment hog operation. Citizens refused to renew this obligation in 1982 unless Bode could provide it with some security on the loan, as the hog business had ceased operation. Citizens was aware of Peoples' security interest in Bode's equipment.

In February of 1982 Peoples' loan officer and vice-president, Ralph Spurgeon (Spurgeon), spoke with Citizens' president, Curtis Benter (Benter) via telephone to discuss the possibility of Peoples' releasing its security interest in Bode's equipment so that Citizens could use it as security. Spurgeon advised Benter that Peoples would release the equipment if it obtained a third mortgage on Bode's real estate. There was no further communications between the banks on this matter. Citizens had no knowledge of any negotiations between Bode and Peoples concerning either the release of the equipment or a third mortgage.

On March 4, 1982, Spurgeon prepared and signed a document which stated Bode's name, address, and equipment covered by its security agreement. At the bottom of the list is typed "The above list of equipment is to be used as security by the Citizens State Bank." Above Spurgeon's signature, also in his handwriting, is the sentence "We will release these items." Spurgeon delivered this document to Bode, who also signed it and delivered it to Benter that same day. Bode relayed to Benter that Spurgeon had told him the equipment had been released and he was "free to take it to Citizens". Benter telephoned the Recorder of Bartholomew County to inquire as to any financing statement on file between Bode and Peoples, and was assured there was none. Benter further requested and received a written search from the Bartholomew Recorder verifying the absence of such a financing statement. Citizens then prepared a promissory note, a security agreement with an attached list of

Bode's equipment and a financing statement, all of which were executed by Bode on March 4. Citizens filed its financing statement with the Recorder of Bartholomew County on March 8, 1982.

In January of 1983 Peoples discovered it had erroneously filed its financing statement on the Bode loan in Jackson County. A second financing statement was prepared and filed in Bartholomew County by Peoples on January 17.

On February 3, 1983 Peoples filed a complaint to foreclose on its lien on Bode's equipment. Instead of giving Peoples a third mortgage on his real estate, Bode filed Chapter 7 bankruptcy on May 2 and was thereafter relieved of any debt owed Peoples or Citizens. Citizens filed a counterclaim and cross-claim alleging an interest superior to Peoples in Bode's equipment on September 2, 1983. Following a bench trial on December 27, judgment was entered in favor of Peoples on December 28, 1983.

### ISSUES

Citizens raises two issues for our review; however, we find reversal is warranted upon examination of but one: whether the trial court erred in ruling the lien of Peoples was superior to that of Citizens regarding Bode's equipment.

### DISCUSSION AND DECISION

 The judgment of the trial court reads, in pertinent part:

"The evidence leaves no doubt that Peoples received a security interest in the personalty of Bode in November of 1979, and that Citizens had actual knowledge of that interest on March 4, 1982. Given this, Citizens has three possible theories of recovery: one—a direct contract of release between it and Peoples; two—as a third party beneficiary of a contract of release between Bode and Peoples; and third—promissory estoppel of Peoples' alleged promise of release.

As to the direct contract theory, there is no consideration by Citizens to support

the promise of Peoples to release the security. Similarly, Citizens cannot prevail as a third party beneficiary of a contract of release between Bode and Peoples. Bode never completed his part of the bargain, ie., a promised third mortgage on realty of Bode was never executed to secure the November, 1979 loan by Peoples to Bode. Finally, Citizens cannot claim that it substantially changed its position to its prejudice by its reliance on the alleged promise to release by Peoples. The evidence reveals that Citizens had previously executed an unsecured loan with Bode, the antecedent debt which was to be secured by the personalty in question."

Our standard of review requires that we examine the evidence in a light most favorable to the trial court's decision. In evaluating the sufficiency of the findings of fact and conclusions of law we must accept ultimate facts as stated by the trial court if there is evidence to sustain them. *Merchants National Bank & Trust Company of Indianapolis v. H.L.C. Enterprises, Inc.,* (1982) Ind.App., 441 N.E.2d 509. In order to set aside these findings and conclusions they must be clearly erroneous. Ind.Rules of Procedure, Trial Rule 52(A); *Town & Country Mutual Insurance Company v. Savage,* (1981) Ind.App., 421 N.E.2d 704. We find the ruling of the trial court that Peoples possessed a superior lien on Bode's equipment is clearly erroneous and must be reversed in favor of Citizens.

■ Contrary to the ruling of the trial court, this case fits squarely into the frame of promissory estoppel. This court has ruled the doctrine is applicable to commercial transactions. *Lyon Metal Products v. Hagerman Construction Corporation,* (1979) Ind.App., 391 N.E.2d 1152. *See* IND.CODE 26–1–1–103. The use of promissory estoppel is also consistent with the Uniform Commercial Code's (UCC) obligation of good faith, found in Title 26 of the IND.CODE. *See* IND.CODE 26–1–1–203; *Potter v. Hatter Farms, Inc.,* (1982) 56 Or.App. 254, 641 P.2d 628.

Indiana follows the format of promissory estoppel embodied in Section 90 of the Restatement of Contracts and set out in *Lyon, supra:*

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by the enforcement of the promise."

391 N.E.2d at 1154.[1]

Promissory estoppel is most often applied where one party signifies his intention to abandon an existing right, leading another to act to his detriment in the event such right is subsequently asserted. *Drake v. Eggleston,* (1952) 123 Ind.App. 306, 108 N.E.2d 67. Here, Peoples signified its intention to release Bode's equipment leading Citizens to use it as collateral for the renewal of its loan to Bode.

■ The promisor need not receive any benefit or consideration from the transaction. *Lyon, supra.* Actual fraud on the part of the promisor is not a requisite but there must be some false representation or concealment of facts. *Lacy v. Wozencraft,* (1940) 188 Okl. 19, 105 P.2d 781. Whether Spurgeon's handwritten statement "We will release these items" constitutes a misrepresentation of current fact or an unfulfilled promise as to future action is irrelevant to the application of promissory estoppel. *E.A. Coronis Associates v. M. Gordon Construction Co.,* (1966) 90 N.J.Super. 69, 216 A.2d 246. However, it is necessary that Citizens reliance on the representation was reasonable. *Marker v. Preferred Fire Insurance Company,* (1973) 211 Kan. 427, 506 P.2d 1163. The list of equipment prepared by Peoples and furnished to Citizens stated both that equipment was to be used as security by Citizens and that Peoples would release it. Benter, acting for Citizens, was justified in relying on this document which was consistent with Bode's relayed mes-

---

**1.** All foreign cases cited also deal with Sec. 90 of Restatement of Contracts.

sage from Spurgeon, especially in light of his own prior conversation with Spurgeon and his independent investigation of the county records. *See Larabee v. Booth,* (1984) Ind.App., 463 N.E.2d 487. We have no insight into Peoples reasons for preparing and delivering to Citizens the ostensible release of Bode's equipment. We can only infer from the face of it that Peoples intended Citizens to rely upon the information and statements contained therein. In any case, Peoples should reasonably have expected such reliance following Spurgeon's discussion with Benter, knowing Citizens was not involved in and unaware of the status of Peoples negotiations with Bode regarding a third mortgage.

The trial court found Citizens had not substantially changed its position because it had previously executed an unsecured loan with Bode on his hog operation. However, Citizens initially refused to renew that loan, and intended to try to collect on it because the hog business had ceased operation. Only if Bode could provide collateral to secure the obligation would Citizens agree to renew it. Upon receipt of the list of Bode's equipment prepared by Peoples, Citizens positively acted to renew its loan to Bode and perfect its security interest by properly filing a financing statement covering the equipment. Citizens also forbore suing to recover the amount outstanding on Bode's loan. This conduct is "of a definite and substantial character" and meets the strictures of Sec. 90. *Cf. W.B. Saunders Co. v. Galbraith,* (1931) 40 Ohio App. 155, 178 N.E. 34 (Promise without consideration induced creditor to forbear asserting claim against an estate). *See also Stanish v. Polish Roman Catholic Union,* (7th Cir.1973) 484 F.2d 713.

Finally, Citizens reliance on Peoples' representations of release would produce "substantial economic loss" to Citizens if Peoples is permitted to reassert its prior right to the equipment. *See generally* L.

Simpson, *Handbook on Contracts,* Sec. 61 (1965). Assuming Peoples' lien on Bode's equipment had been effective as against Citizens before the release, Citizens' lien would then be subordinate to that of Peoples. The failure of Peoples to follow through on its statements to release Bode's equipment was due to its unsuccessful attempt to secure a third mortgage on his real estate. Citizens should not be the scapegoat for the shortcomings of Peoples' business dealings to which Citizens was not a party.

Having met the rigors of this equitable doctrine, Citizens should be permitted to benefit from the enforcement of Peoples representation to release Bode's equipment. *But cf. Barnes v. Boyd,* (1934) 18 Tenn.App. 55, 72 S.W.2d 573 (Promissory estoppel will not arise to protect rights under a contract of release yet to be made, where due diligence not employed to discover existence of release). As Citizens properly filed a financing statement on March 8, 1982 its lien on Bode's equipment was perfected before Peoples properly filed on January of 1983. Therefore, Citizens' lien has priority over that of Peoples. *See Security National Bank and Trust Company of Norman v. Dentsply Professional Plan,* (1980) Okla., 617 P.2d 1340.

The same result is appropriate under the UCC, embodied in Title 26 of the IND. CODE.[2] All IND.CODE references to UCC sections shall be made by the latter's designation. Peoples did receive a security interest in Bode's farm equipment in 1979; however, the question remains whether such interest was perfected as against Citizens when it filed its financing statement on March 8, 1982.

Under 9–401(2) Peoples' filing in Jackson County was wholly ineffective because it was not proper as to any of the collateral. An exception does exist where a party has "knowledge of the contents of such financing statement". 9–401(2). Knowledge means actual knowledge. 1–201(25). It

---

2. All foreign cases cited herein have adopted the UCC and rely on state provisions containing no material differences from Indiana's Title 26.

has been suggested in light of the language of the current statute, which replaced a prior version stating knowledge of the filing was sufficient, that an "eyeing the document" test is required. J. White & R. Summers, *Uniform Commercial Code,* Sec. 23–15 (2d Ed.1980). Whether the party must have actually observed the financing statement to be bound by it is not clear; however, most jurisdictions agree mere knowledge of a security agreement is inadequate. *But see In re Davidoff,* (S.D.N.Y. 1972) 351 F.Supp. 440. As stated in *Goldberg Co. v. County Green Limited Partnership,* (W.D.Va.1977), 438 F.Supp. 693:

> "The Uniform Commercial Code is a carefully planned and systematic compilation of logic and experience. Words are painstakingly defined and used in accordance with their intended impact on the everyday commercial transaction. A security agreement is not the same thing as a financing statement. Had the legislature intended for knowledge of a security agreement to be the same as knowledge of the contents of a financing statement it could have said so."

438 F.Supp. at 697–8.

The truth of this is apparent from the UCC drafters', and our legislature's use of the phrase "knowledge of the security interest" in 9–301(1)(b).

Indiana courts have not previously had an opportunity to decide what level of knowledge is sufficient to bring a party under the exception of IND.CODE 26–1–9–401(2); however, some basic requirements are obvious from an analysis of the UCC itself. As stated above, a security agreement and a financing statement are two different instruments with distinct purposes. The former is a document setting out an arrangement between a creditor and a debtor, while the latter is a paper which must be filed in a designated public office to perfect a security interest and notify any interested party that such exists. 9–105(h); 9–302; 9–401; 9–402. Priority between conflicting security interests in the same collateral is determined strictly by the order of filing. 9–312(5) and comments

thereto. This pure race section operates without regard to the parties state of knowledge and nowhere requires the holder of a security interest second in time to be without knowledge of the prior interest in order to prevail when he has filed his financing statement first. *See also White & Summers,* supra, Sec. 25–4. Thus, the threshold amount of knowledge by a subsequent creditor under 9–401(2) must necessarily be greater than this.

Section 9–401(2) contemplates (1) filing of a financing statement somewhere; and (2) knowledge by a subsequent secured party of the contents of *such* financing statement, referring to the one filed. It follows that knowledge the financing statement was filed somewhere is included in the requirement of "knowledge of the contents". As previously mentioned, before the 1956 changes in 9–401(2), knowledge of the filing sufficed. This minimal knowledge is still required but now, additional fact-specific proof that a creditor was aware of an earlier filed interest is necessary to defeat the second, perfected interest.

At this point, reference to apposite decisions of our sister states would be helpful. In *Goldberg, supra,* a bank which financed a construction project properly filed a financing statement covering appliances to be installed in the completed building. The vendor of these appliances, which would ordinarily have a superior purchase money security interest under 9–312, filed its financing statement in the improper county. The court held that 9–401(2) would not protect the vendor where the bank had notice of the vendor's security interest and had even received a photostatic copy of its security agreement but was unaware of the financing statement. The bank had searched the records of the proper county for the vendor's financing statement but had not located one. Upon the bankruptcy of the debtor/purchaser, the bank's lien took priority over the vendor's.

*United States v. Waterford No. 2 Office Center,* (1980) 246 Ga. 475, 271 S.E.2d 790 involves a pledge of equipment located in the debtor's office in the Waterford build-

ing to secure a bank loan guaranteed by, and later assigned to, the Small Business Association (SBA). The bank filed a financing statement in the improper county. After the debtor defaulted on the loan, the SBA orally informed Waterford of its security interest in the equipment located there. Waterford became a judgment lien creditor of the debtor. Following the sale of the equipment a priority dispute arose between the SBA and Waterford. The Supreme Court of Georgia held that under that state's version of 9–301(1)(b), which states an unperfected security interest is subordinate to the rights of one who becomes a lien creditor before the security interest is perfected,[3] Waterford had priority. The SBA's argument under 9–401(2) failed because it had not proven Waterford had knowledge of the contents of its financing statement; only its security interest. *See also In re Advertising Distributors of America, Inc.* (E.D.Oh.1965), 2 UCC Rep. 548, aff'd. (N.D.Oh.1965) 3 UCC Rep. 225.

The court in *In re Davidoff, supra,* rejected the notion that knowledge of a security interest is necessarily not the same as knowledge of the contents of the financing statement. *See also Matter of Enark Industries, Inc.,* (1976) 86 Misc.2d 985, 383 N.Y.S.2d 796. *Franklin National Investment Corp. v. American Swiss Parts Co.,* (1972) 42 Mich.App. 211, 201 N.W.2d 673. In *Davidoff,* the court ruled an equipment supplier, through conversations with the debtor, had all knowledge of a bank's prior chattel mortgage covering the equipment as if he had read the financing statement. It applied New York's law of notice to the UCC's obligation of good faith in 1–203 to find the supplier had been put on inquiry and possessed the means of acquiring knowledge of the contents of the financing statement, and therefore should be charged with that actual knowledge which was available through "ordinary diligence".

We decline to accept New York's broad view of what constitutes knowledge under 9–401(2). Section 1–102 states the UCC provisions shall be liberally construed and applied. However, if mere knowledge of a security interest or agreement is deemed equivalent to knowledge of the contents of the financing statement, the pure race aspect of 9–312(5) would be undermined. *See also Security National Bank, supra; Goldberg, supra.* Nor do we hold actual examination of the financing statement is always necessary. In keeping with the UCC's policy of flexibility, we believe the intermediate level of knowledge required under 9–401(2) should not be rigidly fixed. Rather, each case must be evaluated on its particular facts keeping in mind the UCC's catch phrases of good faith, diligence, reasonableness and due care. *See* 1–102 and comments thereto.

In the case at bar Citizens admits to having knowledge of Peoples security interest in Bode's equipment prior to March 4, 1982. Peoples had the further burden of proving Citizens somehow had knowledge of the contents of its financing statement, including the fact that a filing occurred, when Citizens became a lien holder and perfected its security interest in the equipment. 9–401(2); *see Waterford, supra; ITT Industrial Credit Company v. S.L. Robinson,* (1977) Miss., 350 So.2d 48. Peoples has not proven, and did not even allege, Citizens had any knowledge of the existence, filing or contents of its financing statement when it completed the paperwork necessary to use Bode's equipment as collateral for the renewal of his loan. In fact, all of the evidence supports the opposite conclusion. Benter testified:

"I assumed by the statement made by Ralph Spurgeon on [the document he sent to me] and by the statement made by Kenneth Bode to me that this equipment had been released and by the fact that no Financing Statement was found in Bartholomew County, Indiana that the equipment had been released by the Peo-

---

**3.** Georgia has adopted the 1972 amendment to 9–301(1)(b). Cf. IND.CODE 26–1–9–301(1)(b) which contains the original text of 9–301(1)(b).

ples Bank and was free of any security interest in the farm machinery and equipment as listed on [the document]."

We need not decide whether the document delivered to Citizens purporting to release Bode's equipment was adequate under 9–406, as that section deals with a statement presented to the filing officer and notes that such is merely a "permissive devise". Comment to 9–406. Rather, the document serves to buttress Citizens position that it had no reason to know of Peoples improperly filed financing statement or its continued interest in Bodes equipment when citizens perfected its security interest. Moreover, Citizens employed due diligence, as required in *Davidoff, supra,* in searching the records before perfecting its security interest and discovered no financing statement. "Given this fact, it is difficult to perceive of how a party can know the contents of something which [it] does not know exists." *Goldberg, supra* at 697.

■ We find Peoples has not carried its burden of proving Citizens had any knowledge whatsoever of the contents of its financing statement when it took a security interest in Bode's equipment. Therefore, Peoples' argument under 9–401(2) must fail. Even if created with knowledge of Peoples' security interest, absent knowledge that a financing statement had been filed, Citizens properly perfected security interest takes priority. 9–312(5).

For all the above stated reasons, the judgment of the trial court that Peoples' lien is superior to that of Citizens as to Bode's equipment is reversed. The proceeds of the sale of such equipment shall first be applied to pay for the cost of this action and the sale, then applied to the debt due Citizens and finally to the debt due Peoples.

Judgment reversed.

RATLIFF, P.J., and YOUNG, J. (sitting by designation), concur.