**FRANKLIN NATIONAL BANK, Appellant,**

v.

**Richard BOSER, Appellee.**

No. 06-97-00068-CV.

Court of Appeals of Texas, Texarkana.

Submitted May 21, 1998.

Decided June 5, 1998.

---

14. *Bynum,* 767 S.W.2d at 774.

Ralph K. Burgess, Patton, Haltom, Roberts, Texarkana, for appellant.

W.T. Allison, II, Sulphur Springs, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

This case involves the priority of security interests in cattle. Franklin National Bank ("Franklin"), the senior security interest holder in all of Toby Godfrey's cattle, seized and sold all of Godfrey's cattle after it was notified that Godfrey was quitting the dairy business. Some of the cattle Franklin sold were also subject to a junior security interest held by Richard Boser ("Boser"). Boser sued Franklin in a declaratory judgment action for conversion. Boser received a favorable jury verdict, and the trial court rendered judgment in his favor for $48,000.00 damages and $23,000.00 attorney's fees. Franklin appeals. We reverse the judgment and render judgment for Franklin.

Franklin made two loans to Godfrey in 1992 and 1993, totaling over $250,000.00. The loans were made to enable Godfrey to enter the dairy business. Godfrey purchased cattle with the proceeds from both loans. As security for the loans, Godfrey executed a security agreement and financing statement granting a security interest to Franklin in all currently owned and all after-acquired cattle. Franklin timely and properly filed both of the financing statements with the Texas Secretary of State.

In July of 1994, Godfrey acquired an additional sixty head of cattle from Boser for $60,500.00. Godfrey and Boser used a financing statement, which they called a lease purchase agreement, to transfer the cattle. The agreement provided for Godfrey to pay for the cattle according to an amortization schedule providing for periodic payments of principal and interest. Assuming that Godfrey made all of the payments to Boser, he would own the cattle with no further obligation. Boser filed his financing statement with the County Clerk of Franklin County, Texas, rather than with the Texas Secretary of State. In filing with the County Clerk, Boser relied on advice he received from the County Clerk's office and on the fact that

financing statements are filed with the County Clerk in his home state.

Brad Bass, the Franklin officer who serviced Godfrey's loans, routinely inspected the cattle. On April 17, 1995, Bass discussed Godfrey's loans with the Bank's directors' loan committee. The minutes of that meeting show that Bass discussed issues relating to Godfrey's loans, including "comingling (sic) of mortgaged or leased cows in the pledged herd...." Bass inspected the cattle on April 18, 1995, and found 177 head of cattle present. He noted on his appraisal report that he had asked about a lien that existed on cattle outside of Franklin's loan, and confirmed it. After this inspection, Bass updated Franklin's loan committee on April 24, 1995, as to Godfrey's loans, and the minutes show that "comingled (sic) cattle" were a concern of Bass as of that date.

Godfrey told Bass and Bill Kent, another loan officer, that he was going to quit the dairy business. Inspections of the cattle revealed that there were approximately 177 head of dairy cattle on the property, when there should have been more than 200. Franklin's officers ran a lien search in the Texas Secretary of State's office and found no financing statement other than those Franklin filed in 1992 and 1993. Franklin repossessed all of the cattle and sold them either at public auction or, if the cows were rejected at auction, to the slaughterhouse.

After the cattle were sold, Boser contacted Franklin and claimed an interest in the proceeds. Franklin denied that claim, and Boser filed a declaratory judgment action seeking compensation from Franklin for conversion, a declaratory judgment determining the priority of his lien over Franklin's lien, exemplary damages, prejudgment and post-judgment interest, attorney's fees, and costs of suit.

At the close of Boser's case in chief, Franklin moved for a directed verdict on the basis that its security interest had priority over Boser's security interest. Franklin also asked for an instructed verdict on Boser's claims for exemplary damages and for attorney's fees. The trial court granted only the motion for instructed verdict on exemplary damages. The jury found, among other things, that Boser's transaction with Godfrey was a lease, that the Bank knew, before it foreclosed, that Boser had a security interest in sixty head of the cattle, and that Franklin converted those cattle.

On appeal, Franklin's main contention is that the trial court erred in denying its motion for instructed verdict, motion for judgment notwithstanding the verdict, and motion for new trial because under the undisputed evidence and as a matter of law, it had a prior perfected security interest in all cattle at issue superior to Boser's security interest.

■■■ An instructed verdict or judgment notwithstanding the verdict is proper when there is no evidence supporting the jury's findings or when the movant is entitled to judgment as a matter of law. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Wal-Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 590 (Tex.App.-Texarkana 1992, writ denied). In reviewing a no evidence point introduced in a motion for judgment notwithstanding the verdict, we consider only the evidence and the inferences supporting the finding and disregard evidence and inferences to the contrary. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993); *Responsive Terminal Sys., Inc. v. Boy Scouts of America,* 774 S.W.2d 666, 668 (Tex.1989). A trial court may disregard a jury's answer and render a judgment notwithstanding the verdict only if a directed or instructed verdict would have been appropriate. *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392 (Tex. 1991); *City of Lubbock v. Corbin,* 942 S.W.2d 14, 19 (Tex.App.-Amarillo 1996, writ denied).

■■■ Secured transactions in Texas are governed by Chapter 9 of the Texas Business and Commerce Code. The priority of competing security interests is determined by certain rules and exceptions contained in Chapter 9. In general, priority between conflicting security interests where both interests are perfected by filing vests in the party who first properly filed a financing statement. TEX. BUS. & COM.CODE ANN. § 9.312(e)(1) (Vernon 1991). A security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken. TEX. BUS. & COM.CODE ANN.

§ 9.303(a) (Vernon Supp.1998). A security interest attaches when 1) the debtor signs a security agreement containing a description of the collateral; 2) the secured party gives value for the security interest; and 3) the debtor obtains rights in the collateral. TEX. BUS. & COM.CODE ANN. § 9.203(b) (Vernon 1991); *Fisher v. First Nat'l Bank of Memphis,* 584 S.W.2d 515, 516 (Tex.Civ.App.-Amarillo 1979, no writ); *Borg–Warner Acceptance Corp. v. Wolfe City Nat'l Bank,* 544 S.W.2d 947 (Tex.Civ.App.-Dallas 1976, no writ). Additionally, to perfect a security interest the financing statement must be filed in the appropriate place. *See* TEX. BUS. & COM.CODE ANN. § 9.302(a) (Vernon Supp. 1998), and § 9.401(a) (Vernon 1991). The cattle involved here are classified as "farm products" under Chapter 9. *See* TEX. BUS. & COM.CODE ANN. § 9.109(3) (Vernon 1991); *see also* TEX. BUS. & COM.CODE ANN. § 9.109 cmt. 4 (Tex.UCC) (Vernon 1991). A security interest in farm products should be filed with the Texas Secretary of State. TEX. BUS. & COM.CODE ANN. § 9.401(a).

An exception to the general priority rule of "first in time, first in right," is a purchase money security interest ("PMSI"). A PMSI is either an interest taken or retained by the seller to secure all or part of the price of the collateral, or an interest taken by a person who, by making advances or incurring an obligation, gives value that is used by the debtor to acquire the collateral. TEX. BUS. & COM.CODE ANN. § 9.107 (Vernon 1991); *Mark Prods. U.S., Inc. v. Interfirst Bank Houston,* 737 S.W.2d 389, 392 (Tex. App.-Houston [14th Dist.] 1987, writ denied). A PMSI in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds *if the PMSI is perfected* at the time the debtor receives possession of the collateral or within twenty days thereafter. TEX. BUS. & COM. CODE ANN. § 9.312(d) (Vernon 1991); *Citizens Nat'l Bank of Denton v. Cockrell,* 850 S.W.2d 462, 463 (Tex.1993); *Mark Prods. U.S., Inc. v. Interfirst Bank Houston,* 737 S.W.2d at 392.

It is undisputed that Franklin had a valid security interest that attached in 1992 and 1993 to all cattle then owned or after acquired by Godfrey.[1] Franklin immediately filed its financing statements with the Texas Secretary of State in 1992 and 1993. Thus, in 1993 Franklin had a perfected security interest that had priority over subsequent perfected or unperfected security interests, unless the subsequent security interest was a PMSI perfected within twenty days of the debtor taking possession of the collateral. TEX. BUS. & COM.CODE ANN. § 9.312(d).

In 1994, Boser sold sixty cows to Godfrey and retained an interest in them in order to secure part of their price. Within twenty days of Godfrey's taking possession of the cattle, Boser filed a financing statement with the County Clerk, rather than with the Secretary of State. Thus, Boser did not perfect his security interest as required for a PMSI, and under the general priority rules, Franklin's first in time perfected security interest, as a matter of law, had priority over Boser's subsequent unperfected PMSI.

Boser argues that he comes within two exceptions to the general priority rules that give him priority over Franklin. First, he argues that his transaction with Godfrey was a lease rather than a sale. He thus argues that the title to his cattle never passed to Godfrey, so Franklin's security interest did not attach to those cattle. Whether a transaction is considered a sale or a lease for security interest purposes is governed by the Texas Business and Commerce Code. The Code provides that "[t]he retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of a 'security interest.'" TEX. BUS. & COM.CODE ANN. § 1.201(37)(A) (Vernon 1994). A lease is defined as "a transfer of the right to possession and use of goods for a term, in return for consideration." TEX. BUS. & COM. CODE ANN. § 1.201 cmt. 37 (Tex.UCC) (Vernon Supp.1998). Further, the Code distin-

---

1. Franklin does not contend that it had a PMSI in the after-acquired cattle. The United States Court of Appeals has held that a PMSI does not extend to after-acquired property. *See In re*

*Manuel,* 507 F.2d 990, 993 (5th Cir.1975); *cf. Borg–Warner Acceptance Corp. v. Tascosa Nat'l Bank,* 784 S.W.2d 129, 135 (Tex.App.-Amarillo 1990, writ denied).

guishes leases from security interests disguised as leases:

(B) Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:

. . .

(iv) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

TEX. BUS. & COM.CODE ANN. § 1.201(37)(B) (Vernon 1994). This test focuses on the economics of the transaction, rather than on the intent of the parties. *See* TEX. BUS. & COM. CODE ANN. § 1.201 cmt. 37. Under this section, if a "lease" or "lease/purchase" instrument provides on its face that when the terms of the lease are complete the lessee becomes the owner of the property for no additional consideration, the lease is, as a matter of law, a security interest. *Superior Packing, Inc. v. Worldwide Leasing & Financing, Inc.*, 880 S.W.2d 67, 71 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Pierson v. GFH Financial Servs. Corp.*, 829 S.W.2d 311, 315 (Tex.App.-Austin 1992, no writ); *Horton v. Dental Capital Leasing Corp.*, 649 S.W.2d 655, 657 (Tex.App.-Texarkana 1983, no writ). The financing statement between Boser and Godfrey states that the transaction is a "lease purchase plan," but it provides as follows:

Sixty (60) holstein dairy cows—to be replaced at debtor's expense. This is a LEASE PURCHASE PLAN—which means these cattle are considered secured party's property until cattle are paid in full. When cattle are replaced or sold, secured party must be notified of such action.

Total amt. for cattle—$60,500.00; Received down payment of $6000.00—total amt. due—$54,000.00; 8% Interest starting 7-25-94; $1500.00 Mo. payments for the first nine months starting 10-1-94; $2100.00 per month after the first nine months. Payments to be applied first to interest due, then to principal. Total amt. due may be paid off at any time.

According to the financing statement, Godfrey was required to make set payments to Boser, and the agreement was not expressly subject to termination by Godfrey. Further, if Godfrey had made all the required payments, he would have owned the cattle outright with no further obligation to Boser.

Additionally, the agreement contains an amortization schedule, which separated the payments into principal and interest. If the transaction were a lease, the entire "lease" payment would be deductible as a business expense and there would be no need for an amortization schedule. *See Bullock v. Citizens Nat'l Bank of Waco*, 663 S.W.2d 923, 924 (Tex.App.-Austin 1984, no writ). This provision gives additional support to the conclusion that the transaction was a sale and retention of a security interest, and not a lease.

According to the provisions of the Code, the agreement between Godfrey and Boser was, as a matter of law, a sale of cattle with the retention by Boser of a security interest, and not a lease. *See* TEX. BUS. & COM.CODE ANN. § 1.201(37)(B); *Superior Packing, Inc. v. Worldwide Leasing & Financing, Inc.*, 880 S.W.2d at 71; *Horton v. Dental Capital Leasing Corp.*, 649 S.W.2d at 657.

 The second exception on which Boser relies is the good faith filing exception contained in Section 9.401(b). Section 9.401(b) states:

A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

TEX. BUS. & COM.CODE ANN. § 9.401(b) (Vernon 1991). The comment to this section states:

When a secured party has in good faith attempted to comply with the filing requirements but has not done so correctly, subsection (2) makes his filing effective in so far as it was proper, and also makes it good for all collateral covered by the financing statement against any person who actually knows the contents of the improperly filed statement. The subsection rejects the occasional decisions that an improperly filed record is ineffective to give notice even to a person who knows of it.

TEX. BUS. & COM.CODE ANN. § 9.401 cmt. 5 (Tex.UCC) (Vernon 1991). The purpose of this section is to protect a party who first acquires a security interest but who improperly files his financing statement in good faith, against a subsequent security interest holder who knows of the first security interest and who perfects his interest in an attempt to gain priority over the first interest holder because of his mistake in filing. It is clear that the Code authors felt that it would be unjust to allow a second in time interest holder who knows of a prior security interest to take advantage of the mistake of the first security holder to gain priority, and the courts have consistently held that the first in time interest holder should have priority over the second in time interest holder. *See, e.g., Beneficial Finance Co. of Amarillo v. Van Shaw,* 476 S.W.2d 772 (Tex.Civ.App.-Eastland 1972, no writ); *Franklin Nat'l Inv. Corp. v. American Swiss Parts Co.,* 42 Mich. App. 211, 201 N.W.2d 673 (1972). Indeed, one commentator has stated,

> Therefore, as against a competing creditor, *the prior secured creditor* may find shelter in the good-faith filing provisions of the [Uniform Commercial Code] if he has filed in good faith and can prove that the competing creditor had actual knowledge of his prior unperfected security interest. This construction of Section 9–401(2) is certainly consistent with the concept of notice filing.

Harold Anthony Justman, *Imperfect Perfection of Security Interests: Good–Faith Filing and Good–Faith Possesion,* 9 UCC L.J. 45, 49 (1976) (emphasis added).

What is not so clear is the result when the first interest holder properly perfects his security interest and the second interest holder mistakenly files in the wrong location, but the first in time interest holder has knowledge of the contents of the second holder's financing statement. A case that sheds some light on this situation is *In re Ruf,* 32 B.R. 169 (Bankr.W.D.Wis.1983). In *Ruf,* the court faced a priority dispute between two parties who had both filed in the wrong location. A bank made a loan to a farmer and took a security interest in his growing crops, but filed its financing statement in the wrong county. Subsequently, a supplier took a security interest in the same crops and filed the financing statement in the same incorrect county as the bank. Later, the bank learned of the error in its filing and promptly filed an additional financing statement in the proper recording office.

The supplier in *Ruf* argued that its security interest was entitled to priority under Section 9–401(2) of the Uniform Commercial Code (the same provision as Section 9.401(b) of the Texas Business and Commerce Code) because its interest became effective against the bank when the bank obtained knowledge of it. The court disagreed and held that the bank's interest took priority over the supplier's interest. The court stated that, even absent the bank's subsequent filing, the bank would have been entitled to priority under Section 9–312(5)(b) of the Uniform Commercial Code because its security interest was first to attach. The rationale of the court is that the good faith filing exception should not override a priority to which a party was otherwise entitled. Rather, it should only preclude a secured party from bettering his position over a competing creditor who had filed improperly.

Between two competing perfected security interests, the party who perfects or files first has priority. *See* TEX. BUS. & COM.CODE ANN. § 9.312(e)(1). It follows that when a first in time creditor properly perfects his interest, and a second in time creditor misfiles his financing statement, the first in time creditor still has priority, even though he knows about the second interest. A contrary construction would allow a second in time creditor, who would not have had priority even by properly perfecting his interest, to obtain

priority over a senior interest holder by mis-filing his own financing statement-an absurd result.

An even more difficult situation, and the one presented in this case, is where the second in time creditor is a PMSI holder and he in good faith files in the wrong location, and the first in time creditor who properly perfected gains knowledge of the second financing statement, but only after he perfected his security interest. This presents a more difficult situation because a second in time PMSI holder who perfects his interest at the time the debtor receives possession of the collateral or within twenty days thereafter has priority over a first in time perfected non-PMSI security holder. *See* TEX. BUS. & COM.CODE ANN. § 9.312(d). Thus, if Boser had properly filed his financing statement with the Texas Secretary of State, he would have had priority over Franklin under the general priority rules. Boser argues that Section 9.401(b) should apply to perfect his PMSI, thus giving him priority over Franklin. Franklin argues that, as a matter of law, Section 9.401(b) does not apply to help any junior interest holder, even a PMSI holder, over a senior interest holder.

The only Texas case on point is *Borg–Warner Acceptance Corp. v. Wolfe City Nat'l Bank*, 544 S.W.2d 947. Borg–Warner filed its inventory financing statement in 1972 for money loaned to David Brown Tractor Company. In 1974, Wolfe City advanced money to David Brown Tractor Company in order that David Brown could buy inventory, thus giving Wolfe a PMSI in the inventory. Wolfe City failed to properly file its financing statement and did not give notice of its inventory financing to other lienholders, including Borg–Warner. The court stated:

> Notwithstanding that Wolfe City filed its financing statements in the wrong location, it argues that the financing statements are nevertheless effective because they were filed in good faith and Borg–Warner knew of their contents [citing Section 9.401(b) ]. However, this section of the statute is not applicable to this case because Borg–Warner had perfected a security interest long before Wolfe City decided to make the loan to Nations, and therefore Borg–War-

ner could not have had knowledge of the contents of Wolfe City's financing statements prior to perfecting its own security interest.

*Id.* at 951. Thus, the court held that Borg–Warner, the first in time perfected interest holder, had priority over Wolfe City, the second in time PMSI holder, because at the time that Borg–Warner perfected its security interest it did not have knowledge of another competing creditor's financing statement. *Id.* at 952.

We agree with the reasoning of the court in *Borg–Warner*. Even if the good faith filing section would otherwise apply in this case, Section 9.401(b) obviously contemplates that the "knowledge" of the contents of the misfiled financing statement must be knowledge that the competing security interest holder had *at the time he acquired his security interest*. To allow subsequent knowledge to trigger the good faith exception would render the knowledge requirement meaningless, because in every case the competing security interest holder would at some point, i.e., at foreclosure, suit, or whenever the conflict arose, have knowledge of the other security interest. Here, Franklin did not have any knowledge of Boser's interest when it took its interests, because Boser's was not in existence.

An Illinois court of appeals, when faced with similar facts regarding farm equipment, has held similarly to *Borg–Warner*, and in so doing stated, "Section 9–401(2) contemplates (1) filing of the financing statement somewhere; and (2) knowledge by a *subsequent* secured party of the contents of such financing statement, referring to the one filed." *DuQuoin Nat'l Bank v. Vergennes Equipment, Inc.*, 234 Ill.App.3d 998, 175 Ill.Dec. 353, 599 N.E.2d 1367, 1374 (1992) (citing *Citizens State Bank v. Peoples Bank*, 475 N.E.2d 324, 329 (Ind.Ct.App.1985)). The court ultimately held that the second in time PMSI holder who misfiled his financing statement would defeat *subsequent* secured parties with knowledge of the misfiled financing statement but would not defeat a *prior* perfected security interest.

Several courts have held to the contrary. The Kansas Court of Appeals addressed this

problem in *Community Nat'l Bank v. Moyer,* 17 Kan.App.2d 218, 836 P.2d 1198 (1992). The Kansas court held that Section 9–401(b) does apply to a second in time PMSI holder so that he would gain priority over a first in time perfected non-PMSI holder who had knowledge of the contents of the misfiled financing statement. The court stated:

> [T]here is conflicting authority as to the application of § 9–401(2) to a PMSP who misfiles after another party has perfected a security interest. In the absence of statutory language to the contrary, we conclude the good faith misfiling exception ... applies to misfiled purchase money security interests regardless of whether the prior perfected secured party perfected its security interest before or after acquiring knowledge of the improperly perfected purchase money security interest.

*Id.* 836 P.2d at 1200. Further, a federal district court in Maryland and a bankruptcy court in North Dakota have held that the good faith exception should apply to PMSIs. *See Temporaries, Inc. v. Maryland Nat'l Bank,* 626 F.Supp. 1025, 1028 (D.Md.1986); *In re Johnson,* 28 B.R. 292, 297 (Bankr. N.D.Ill.1983). We disagree with the holdings in these cases. We believe they misinterpret the good faith filing exception, and that they go against the policy of the Uniform Commercial Code to bring predictability to commercial transactions. Moreover, their holdings are contrary to the only Texas precedent in point with our case, *Borg–Warner Acceptance Corp. v. Wolfe City Nat'l Bank,* 544 S.W.2d 947.

Boser attempts to distinguish *Borg–Warner* because it involved inventory collateral. We reject this contention. The cases relied on by Boser disagree with *Borg–Warner* not because the collateral there was inventory, but because they interpret the good faith filing provision differently with respect to the time the perfected security interest holder acquired knowledge of the nonperfected interest. We remain convinced that *Borg–Warner* is correct.

For the reasons stated, we hold that, as a matter of law, Franklin had a priority security interest in all the cattle on which it foreclosed and that it sold. Therefore, the judgment of the trial court is reversed and judgment is here rendered that Boser take nothing.