**FIRST NATIONAL BANK AND TRUST, WIBAUX, MONTANA, Plaintiff-Appellant,**

**v.**

**FIRST NATIONAL BANK OF GREYBULL, WYOMING, Defendant-Appellee.**

**No. 76–2051.**

United States Court of Appeals, Tenth Circuit.

Argued March 16, 1978.

Decided July 10, 1978.

Rehearing Denied Oct. 10, 1978.

Stephen C. Mackey, Billings, Mont. (Towe, Ball & Enright, Billings, Mont., on the brief), for plaintiff-appellant.

Otis W. Beach, Fort Collins, Colo. (Wolfe, Griffith & Beach, P. C., Fort Collins, Colo., on the brief), for defendant-appellee.

Before McWILLIAMS, BARRETT and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a diversity action and involves the Wyoming enactment of the Uniform Commercial Code. The dispute is between the First National Bank and Trust, Wibaux, Montana ("the Montana Bank") and the First National Bank of Greybull, Wyoming ("the Wyoming Bank"), each of which is a secured creditor of L. & W. Music Company, Inc. ("the Music Company"). The latter is a Montana corporation doing business in both Montana and Wyoming. The question to be resolved is the relative priority of the competing security interests of the two banks. The case was submitted to the trial court on a stipulation of facts. The trial court ruled that, under applicable Wyoming law, the security interest of the Wyoming Bank was superior to the security interest of the Montana Bank. The latter now appeals. We reverse.

From the stipulation of facts, we learn that the Montana Bank loaned money to the Music Company, the latter giving as security for its promise to repay, financing statements and security agreements covering certain gaming machines and devices. The financing statements were properly filed at the appropriate locations under applicable Montana law.

The Music Company subsequently removed the collateral covered by the financing statements from Montana to Wyoming. The Music Company then borrowed money from the Wyoming Bank and gave that bank financing statements and security agreements which covered the same property described in the financing statements and security agreements earlier given the Montana Bank. The Wyoming Bank filed its financing statements with the office of the county clerk in several Wyoming counties, but did not file such with the Wyoming Secretary of State. It is agreed that in order to perfect its interest, under Wyoming law, the Wyoming Bank should have filed the financing statements with the Secretary of State, inasmuch as the Music Company was a non-resident corporation.

Sometime later the two banks became aware of the competing interest each had in the collateral given by the Music Company, and each had knowledge of the financing statements and security agreements held by the other. Some six months thereafter the Montana Bank filed its financing statements with the Wyoming Secretary of State. A few weeks thereafter, the Wyoming Bank similarly filed its financing statements with the Wyoming Secretary of State. It was on this set of stipulated facts that the trial court ruled that the Wyoming Bank had a security interest which had priority over the competing interest of Montana Bank. We disagree.

In our view of the matter, the present controversy turns on the effect of the improper filing by the Wyoming Bank of its financing statements. As we understand it, the parties agree that, absent the improper

filing by the Wyoming Bank, there is no doubt but that the security interest of the Montana Bank would be superior to that of the Wyoming Bank by virtue of the fact that the Montana Bank filed its financing statements in the proper place, i. e., the office of the Wyoming Secretary of State, *prior* to the time that the Wyoming Bank filed its financing statements with that same office. It is on this basis that we conclude that the effect to be given the Wyoming Bank's earlier improper filing is dispositive of the present dispute.

As above mentioned, the Montana Bank initially perfected its security interest by properly filing financing statements with the Montana Secretary of State. Under Wyoming law, the Montana Bank's security interest continued perfected for a period of four months after the collateral was moved from Montana to Wyoming. At that point, however, the security interest of the Montana Bank ceased being a perfected one, though the interest itself remained, because of the failure of the Montana Bank to perfect its interest by filing its financing statements with the Wyoming Secretary of State within that four-month period. It was in this setting that the Wyoming Bank, without knowledge of the financing statements and security agreements given the Montana Bank by the Music Company, received from the latter financing statements and security agreements covering the same property. As indicated, the Wyoming Bank filed its financing statements with county clerk's offices in several counties in Wyoming, but did not file, at that time, with the Wyoming Secretary of State. It is conceded that the filings in the several counties were improper, in that the Music Company was a non-resident corporation, i. e., a Montana corporation, and under Wyoming law the financing statement of a foreign corporation should be filed with the Secretary of State, and not with any county office.

Wyo. Stat. § 34–21–950(b) (1977), which appeared as Wyo. Stat. § 34–9–401(2) (1957) at the time of the trial of this matter, provides as follows:

(b) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article *and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.* (Emphasis added.)

Under the stipulation of facts, it is agreed that in December, 1974, the Montana Bank and the Wyoming Bank became aware of the financing statements and security agreements held by the other. Thus, since the Montana Bank had knowledge of the contents of the financing statement held by the Wyoming Bank, a literal reading of the statute concerning improper filing might indicate that the filing by the Wyoming Bank in an improper place was nonetheless effective.

Our attention has not been directed to any Wyoming case law interpreting the statute concerning the effect to be given an improper filing. However, the statute cannot in our view be given the literal interpretation urged here by the Wyoming Bank. It would appear to us that the intent of the statute was to preclude a party who has knowledge of an existing financing statement which had been filed in an improper place from *thereafter* obtaining a financing statement and security agreement covering the same collateral, properly filing the same in the appropriate office, and thereby obtaining a superior creditor interest in the collateral. That, however, is not the instant case. Certainly the statute has no application to a party who, *prior* to obtaining knowledge of the contents of a financing statement of another, has himself received such a statement on the same property and who, again prior to obtaining knowledge of the financing statement of the other party, has already perfected his security interest by filing with the proper office. We think the same rule should apply to a party who, *prior* to obtaining knowledge of the contents of a financing

statement held by another, has himself already received a financing statement on the same property, and who, after receiving knowledge of the other party's financing statement, thereafter proceeds to perfect his security interest by a filing with the proper office. To hold to the contrary would mean that by filing in an *improper* place a creditor whose secured interest is junior in time could jump ahead of a senior creditor's interest which was filed in the *proper* place. This to us would be an incongruous result. For a general discussion of the effect of a filing made in an improper place, and relative priorities among secured creditors, see J. White and R. Summers, Uniform Commercial Code, at 829–33, 903–13 (1972). The suggestion there is that the statute relating to filing in an *improper* place should be narrowly construed lest it swallow up the general rule that the superior creditor's interest is the one *first* filed in the *proper* place.

 *In re Davidoff*, 351 F.Supp. 440 (S.D. N.Y. 1972), the case relied on here by the Wyoming Bank, in our view tends to support our disposition of the present case. In *Davidoff*, the dispute was between two secured creditors. The critical issue there was whether the junior secured creditor had knowledge of the senior creditor's interest and the extent of such knowledge. Under the stipulation, we have no such problem in the instant case, as it was agreed that in December, 1974, the Montana Bank and the Wyoming Bank were both fully informed of the other's interest. However, we note that in *Davidoff* the creditor's interest which was improperly filed was senior in time, and the party against whom the New York statute regarding improper filing was sought to be invoked was one who *thereafter* accepted a financing statement on the same collateral and then proceeded to properly file his security agreement. That is unlike the present case, where the Montana Bank had a security agreement with the Music Company long before the latter gave a similar security agreement to the Wyoming Bank, and also before the Montana Bank learned of the relationship between

the Wyoming Bank and the Music Company.

Judgment reversed.