In re DOUBLE J CATTLE CO., Debtor.

DOUBLE J CATTLE CO., Plaintiff,

v.

Lyle GEIS, Defendant,

and

First National Bank of Worland, Intervening Defendant & Cross–Claimant.

Bankruptcy No. 95–20112.
Adversary No. 95–2012.

United States Bankruptcy Court,
D. Wyoming.

Nov. 2, 1995.

Georg Jensen, Cheyenne, WY, for Plaintiff.

William L. Miller, Riverton, WY, for Defendant.

Ken McCartney, Cheyenne, WY, for Cross–Claimant.

Ken McCartney, Cheyenne, WY, for Intervenor–Defendant.

## OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND INTERVENOR'S CROSS MOTION FOR SUMMARY JUDGMENT

PETER J. McNIFF, Bankruptcy Judge.

In this adversary proceeding, the plaintiff/debtor, Double J Cattle Co. (Double J), filed its complaint seeking to avoid the lien of the defendant, Lyle Geis (Geis). The First National Bank of Worland (FNB) had earlier

intervened in the case agreeing with Double J that the Geis' lien was avoidable.

After FNB intervened, Double J raised questions on the priority of FNB's lien. Double J filed a motion for summary judgment against both Geis and FNB. Geis filed a motion for summary judgment on the same issues, disputing that the lien was avoidable and agreeing with Double J that it had priority over the FNB lien. FNB filed a response to the motions and a cross-motion for summary judgment against Double J.

The court held a hearing on these motions on October 11, 1995, and took the case under advisement. The court has now reviewed the pleadings of record, the affidavits submitted in this and a related adversary proceeding (Double J Cattle Co. v. First National Bank of Worland, no. 95–2014), and the arguments of counsel, and being fully advised finds that summary judgment is proper and will resolve the issues in this case.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F) and (K). The motions are brought pursuant to Fed.R.Civ.P. 56(a) and (b), made applicable in adversary proceedings by Fed.R.Bankr.P. 7056.

## ISSUES

1. Whether Lyle Geis properly perfected his lien on certain cattle of Double J and, if not, whether that lien can be avoided by Double J pursuant to 11 U.S.C. § 544(a)(1).

2. Whether an order of the Washakie County District Court which transfers title to those cattle to Geis can be avoided by Double J as a preferential transfer.

3. If the Geis interest in the cattle is avoided, whether Double J or FNB has the first priority position.

## UNDISPUTED FACTS

The parties agree that there is no disputed issue of material fact. Double J Cattle Company is a Wyoming general partnership. Double J filed a voluntary petition for relief under chapter 12 on February 28, 1995. For preference purposes, November 30, 1994 is the ninetieth (90) day prior to the filing of the petition.

On November 4, 1991, Double J executed a purchase money, installment note in favor of Geis and a security agreement giving Geis a security interest in 220 mixed age breeding cattle branded J/G. This obligation was in the original amount of $159,500.00. On November 25, 1991, Double J granted Geis a security interest in the same 220 mixed age breeding cattle branded JJF (these cattle were apparently rebranded to comport with the amended security agreement).

Geis filed financing statements with the Wyoming Secretary of State on November 6, 1991 and on April 1, 1992. The April 1, 1992 filing recorded a lien in 220 cattle branded JJF. The principal place of business of Double J on November 6, 1991 and April 1, 1992 was in Washakie County, Wyoming. Geis did not file the security agreements or the financing statements with the County Clerk for Washakie County, Wyoming, as required by Wyo.Stat. Section 34.1–9–401(a)(i).

FNB conducted a U.C.C. lien search of Double J in the offices of the Secretary of State and the Clerk of Washakie County in November or December of 1992. On December 9, 1992, the Clerk of Washakie County responded with an abstract which did not include any filings of record by Lyle Geis.

On December 11, 1992, the Wyoming Secretary of State responded with a report which listed the two (2) Geis filings. Copies of the filed financing statements were not provided to FNB by the Secretary of State. Nor did the report from the Secretary of State describe the contents of the collateral listed on the financing statements. There is no dispute that FNB did not view actual copies of the filed financing statements at that time.

Double J's general partners provided FNB with a copy of the Geis/Double J security agreements prior to borrowing any funds from FNB. The partners' affidavit established this date as prior to December, 1993, but Double J's counsel corrected that date to December, 1992 at the hearing. The parties

did not dispute that December, 1992 is the correct date. FNB knew, prior to lending Double J any funds, that Geis had not filed a financing statement with the Washakie County Clerk.

On January 22, 1993, FNB advanced funds to Double J for the first time. Double J executed a promissory note and a security agreement giving FNB a security interest in all Double J's livestock. This security agreement was filed in both Washakie County and with the Wyoming Secretary of State. Subsequently, other loan documents were executed and recorded, at which time Double J received additional advances. FNB has a validly perfected security interest in Double J livestock, including the cows branded JJF.

On February 2, 1995, the District Court of Washakie County, Wyoming, entered an order in its civil case no. 95–0020. That case was an action brought by Geis to recover the JJF cows because Double J was in default on the installment loan. On the motion of Double J, that court continued a hearing that Geis had brought for a turnover order. The order continuing the hearing also conveyed title in the cattle, described as 195 cows branded JJF and 25 heifers, brand not identified, to Geis. Double J retained possession of the cows and heifers.

## DISCUSSION

The standards for entry of summary judgment are frequently stated and perfectly clear. The court grants summary judgment only when there is no dispute over a material fact, and the court can decide the issue as a matter of law. *In re Baum*, 22 F.3d 1014, 1016–1017 (10th Cir.1994). A fact is material if it could affect the outcome of the claim, and a genuine issue is one where the trier of fact could return a verdict for the nonmoving party. *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir.1994). The court reviews the record and reasonable inferences therefrom in the light most favorable to the opposing party. The parties here agree to the facts, but dispute the conclusions to be drawn therefrom.

*Avoidance of the Geis Lien*

■ The Bankruptcy Code gives the trustee, without regard to knowledge, the power to avoid any transfer of property of the debtor that is voidable by a judgment lien creditor, whether or not one exists, as of the date of the filing of the case. 11 U.S.C. § 544(a)(1). The debtor in possession in a chapter 12 case has the § 544 power of a trustee. 11 U.S.C. § 1203. This section is commonly referred to as a strong arm clause and permits the trustee to avoid unperfected liens without regard to the knowledge of the debtor or the trustee. *In re Paramount Int'l Inc.*, 154 B.R. 712, 714 (Bankr.N.D.Ill. 1993).

■ The transfer which Double J seeks to avoid is the allegedly unperfected lien which Geis claims in the JJF cattle. 11 U.S.C. § 101(54). Whether a security interest is properly perfected is a question of state law. *In re Kitchin Equipment Co. of Virginia, Inc.*, 960 F.2d 1242, 1245 (4th Cir.1992).

Wyoming has adopted the Uniform Commercial Code. In order to perfect a security interest in farm products, a party must file a financing statement in the office of the secretary of state and in the office of the county clerk for the county in which the assignor has its principal place of business. Wyo.Stat. §§ 34.1–9–302(a) and 34.1–9–401(a)(i) (1991).

Geis did not record his lien in Washakie County. Therefore, he did not perfect his lien in accordance with the requirements of Wyoming's Uniform Commercial Code, and the lien can be avoided by Double J. However, Geis argues that because Double J had personal knowledge of his lien (being the grantor) that knowledge is attributable to Double J as the debtor in possession of this estate. This reading of the law is erroneous. By the clear terms of § 544 and the case law interpreting that section, the knowledge of the debtor is not determinative. See *In re Paramount Int'l Inc.*, 154 B.R. at 714.

*Preferential Transfer to Geis*

■ The Bankruptcy Code also grants the trustee (debtor in possession) the power to avoid certain preferential transfers pursuant to § 547. The trustee may avoid any transfer of a debtor's interest in property to a creditor on account of an antecedent debt, if the debtor was insolvent at the time of the

transfer, if the transfer took place within 90 days of the filing of the petition, and if the transfer enabled the creditor to receive more than it would receive in a chapter 7 case. 11 U.S.C. § 547(b).

The transfer which Double J seeks to avoid as a preference is the grant of title to Geis pursuant to the order of the Washakie County District Court. Geis does not dispute that the requisite elements of a preferential transfer are present. He has raised no question to rebut the presumption of the debtor's insolvency provided by § 547(f).

Rather, Geis contends that the new value provisions of § 547(c) operate as a defense to this action.[1] Section 547(c)(1) provides that to the extent a transfer "was intended by the debtor and the creditor ... to be a contemporaneous exchange for new value given to the debtor and was in fact a substantially contemporaneous exchange," the transfer cannot be avoided.

Geis argues that new value was created when he agreed to continue the scheduled turnover hearing in the Washakie County District court. He contends that had the hearing not been continued, he would have acquired possession of the cattle. Therefore, his security interest would have been perfected by possession under Wyo.Stat. § 34.1-9-305.

This argument fails for two (2) reasons. First, if Geis had taken possession of the cattle upon which he does not have a validly perfected security interest, that possession would have been a preferential transfer in and of itself. He would still have received more than he would receive in a chapter 7 case as an unperfected lien holder.

■ Second, the new value sufficient to satisfy the contemporaneous exchange provision does not include foregoing a hearing. New value is defined by § 547(a)(2) as "money or money's worth ... or a release ... of property previously transferred ... but does not include an obligation substituted for an existing obligation." For example, courts consistently hold that forbearance does not

constitute new value. *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986).

■ Whether under § 547(c)(1) or § 547(c)(4), this estate was not enhanced by Geis continuing the hearing, nor by his willingness to accept title rather than possession. *Charisma Inv. Co., N.V. v. Air Florida System, Inc.*, 68 B.R. 596 (S.D.Fla.1986), aff'd *In re Jet Florida System, Inc.*, 841 F.2d 1082 (11th Cir.1988). New value is equivalent to an enhancement of the estate.

The transfer of title to the JJF cows was made within 90 days of the filing of the petition and was made on account of the debt incurred in 1991. Geis received more than he would have received in a chapter 7 case. The transfer of title is an avoidable preferential transfer.

*Lien Priorities*

To the extent that Double J avoids the lien of Lyle Geis in the JJF cattle, Double J argues that it acquires the first priority position of Mr. Geis. FNB disputes this analysis and asserts that its lien is in the first priority position. FNB also claims that all Double J acquires from Geis is an interest junior to FNB, payable from any equity after FNB is satisfied.

■ When a lien or transfer is avoided under § 544 or § 547 of the Code, the transfer is preserved for the benefit of the estate. 11 U.S.C. § 551. Simply put, § 551 permits the trustee (debtor in possession) to step into the position of the creditor whose lien has been avoided, preventing junior lien holders from improving their position. *In re Van De Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir.1990). This power is intended to enhance the estate for the benefit of all creditors.

■ The debtor in possession preserves only the rights to which he has succeeded, i.e., whatever rights Geis had in the property prior to the avoidance. *In re Kors, Inc.*, 819 F.2d 19, 23 (2nd Cir.1987). The parties do not dispute this. The dispute arises when the Geis position, vis a vis FNB, is defined.

---

1. Geis does not state to which subsection of § 547(c) he refers. However, the court does not think § 547(c)(4), the so-called new value exception, is applicable. That section has been characterized as the net result rule and contemplates cash transactions.

FNB argues that because Geis was improperly perfected, FNB has a lien senior in priority to the avoided interest, being first to properly perfect. Double J argues that the case of *In re Van De Kamp's Dutch Bakeries,* in which the trustee avoided a properly perfected fraudulent conveyance and assumed the transferee's position, is controlling.

The parties do agree that the status of the lien to which the trustee succeeds is not enhanced by § 551. *Connelly v. Marine Midland Bank, N.A.,* 61 B.R. 748, 750 (W.D.N.Y.1986). In this case, Double J takes over the Geis position as an unperfected lien holder. But as the court in *In re Kavolchyck,* 164 B.R. 1018, 1024 (S.D.Fla. 1994) correctly points out, the case of *Van De Kamp's Dutch Bakeries* does not end the inquiry when the transfer in question is the act of perfection itself. Thus, the question of relative priority between FNB and Geis must be examined.

The relative priority of the competing liens is determined by reference to state law. *In re Van De Kamp's Dutch Bakeries,* 908 F.2d at 519. Wyoming's Uniform Commercial Code establishes the priorities among conflicting security interests in the same collateral. Under Wyoming Statute § 34.1–9–301(a)(i), an unperfected security interest is subordinate to the rights of persons who, under § 34.1–9–312(e)(i), have priority in time or perfection.

This first in time or perfection rule is modified by a provision which protects creditors such as Geis, whose filings were made in good faith, but not in all of the places required by the U.C.C. *In re Boden Min. Corp.,* 11 B.R. 562, 566 (Bankr. S.D.W.Va.1981). An *improper filing* is nevertheless effective against any person who has "knowledge of the contents of such financing statement." Wyo.Stat. § 34.1–9–401(b) (1991).

FNB argues that its knowledge of the Geis security interest was insufficient, as a matter of law, to satisfy the requirement of "knowledge of the contents" of the financing statement. The debtor argues the contrary.

FNB urges a strict reading of the statute. Under its interpretation, a creditor must actually view the financing statement, or receive a detailed description of its contents from the filing officer. Because it did not view the financing statement, FNB asserts that it did not obtain actual knowledge of a description of the Geis collateral.

In the only reported decision from this district discussing this issue, the Tenth Circuit stated that the subsection should be narrowly construed lest it swallow up the general rule that the superior creditor's interest is the one first filed in the proper place. *First Nat. Bank and Trust, Wibaux, Mont. v. First Nat. Bank of Greybull, Wyo.,* 582 F.2d 524, 527 (10th Cir.1978). However, the court also indicated that the intent of this provision is to preclude a party with knowledge of an existing financing statement from thereafter obtaining a security interest in the same collateral, properly filing, and "thereby obtaining a superior creditor interest in the collateral." *Id.* at 526.

The latter circumstance is more akin to the facts of this case. FNB had knowledge of the financing statement erroneously filed by Mr. Geis in one, but not both, of the proper places. FNB admits that it had knowledge of the Geis security agreement. The debtor's uncontroverted affidavit asserts that the Geis security agreements were provided to FNB in December, 1993 (sic 1992). The security agreement clearly describes the collateral in which Geis claimed a lien. The bank did not advance funds until after it had received that document.

FNB is correct that some courts hold that knowledge of the security interest does not equate with knowledge of the contents of the financing statement. Yet in this case, FNB had knowledge of more than just the security interest. FNB knew on what collateral that interest was claimed.

Knowledge is defined by the UCC as "actual knowledge." Actual knowledge is distinguished from constructive knowledge, which is knowledge imputed by law. *Affiliated Food Stores, Inc. v. Farmers & Merchants Bank,* 10 U.C.C.Rep.Serv.2d 1473, 300 Ark. 450, 780 S.W.2d 20 (1989). Constructive

knowledge is knowledge of matters in a public record.

Actual knowledge does not require that a person actually see the financing statement in order to be charged with knowledge of its contents. *Security Finance Group, Inc. v. United States,* 8 U.C.C.Rep.Serv.2d 460, 463, 706 F.Supp. 83 (D.D.C.1989). In the case of *Community National Bank, Chanute, Kan. v. Moyer,* 18 U.C.C.Rep.Serv.2d 628, 631–632, 17 Kan.App.2d 218, 836 P.2d 1198 (1992), *review denied,* 1992, the court held that a misfiled financing statement was entitled to priority over a creditor with actual knowledge obtained in a telephone call.

The Official Comments to the UCC, although not the law, are somewhat helpful. Paragraph 5 states that "[t]he subsection rejects the occasional decisions that an improperly filed record is ineffective to give notice even to a person who knows of it." This less technical compliance with the phrase "knowledge of the contents" is consistent with the case law cited herein.

In this case FNB knew that the Geis lien existed, knew that Geis had improperly perfected that lien, and knew what collateral that lien was intended to encumber. Had FNB requested a copy of the financing statement, it was available. As a matter of law, and even using a narrow interpretation of § 9–401(2), the court finds that FNB had actual knowledge of the contents of the financing statement, albeit obtained from other sources. This court does not believe that the UCC requires an actual viewing of the document.

In this case, either FNB anticipated that its security interest in the JJF cattle was second in priority to Mr. Geis, or FNB was aware that it might be taking advantage of an unfortunate misfiling situation. In either case, FNB is no worse off now than it was when it knowingly made the first loan to Double J.

Thus, the court concludes that the FNB security interest is second in priority behind the unperfected first lien position of Mr. Geis. Summary judgment on the issue in favor of Double J is proper.

Upon satisfaction of the value of the Geis lien from the JJF cows, any remaining value will be applied to the FNB second priority lien. FNB also correctly points out that only 163 cows remain which were originally branded JJF. FNB still retains a first priority security interest in any cattle originally branded JJ, and later rebranded. Double J has put forth no argument to the contrary, nor any theory under which that lien is avoidable.

## CONCLUSION

The unperfected security interest of Lyle Geis is hereby avoided by the debtor in possession, Double J Cattle Company, and Double J succeeds to the Geis interest. As between the First National Bank of Worland and Double J, Double J has the first priority position in the JJF cows, to the extent of the Geis security interest. First National Bank has a first priority lien on any and all cows branded JJ, whether or not subsequently rebranded JJF. An appropriate judgment will be entered.